129 Nev., Advance Opinion 30

# IN THE SUPREME COURT OF THE STATE OF NEVADA

MARSHALL SYLVER, AN INDIVIDUAL; MIND POWER, INC., A NEVADA CORPORATION; CASA DE MILLIONAIRE, LLC, A NEVADA LIMITED LIABILITY COMPANY; AND PROSPERITY CENTER, LLC, A NEVADA LIMITED LIABILITY COMPANY,
Appellants,
vs.
REGENTS BANK, N.A., A NATIONAL ASSOCIATION,
Respondent.

No. 58869

FILED

MAY 02 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

MARSHALL SYLVER, AN INDIVIDUAL; MIND POWER, INC., A NEVADA CORPORATION; CASA DE MILLIONAIRE, LLC, A NEVADA LIMITED LIABILITY COMPANY; AND PROSPERITY CENTER, LLC, A NEVADA LIMITED LIABILITY COMPANY,
Appellants,
vs.
REGENTS BANK, N.A., A NATIONAL ASSOCIATION,
Respondent.

No. 59683

Consolidated appeals from a district court order confirming an arbitration award and an amended judgment and order of sale. Eighth Judicial District Court, Clark County; Rob Bare, Judge.

*Affirmed.*

Kolesar & Leatham, Chtd., and Bart K. Larsen, Las Vegas, for Appellants.

SUPREME COURT
OF
NEVADA

(O) 1947A

13-12812

Sullivan Hill Lewin Rez & Engel and Christine A. Roberts, Las Vegas; Sullivan Hill Lewin Rez & Engel and James E. Drummond, San Diego, California,
for Respondent.

---

BEFORE HARDESTY, PARRAGUIRRE and CHERRY, JJ.

## OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, we consider whether an arbitration award was obtained through undue means. In resolving this issue, we interpret the meaning of "undue means" under NRS 38.241 in line with the interpretation given by other state and federal courts, whereby the challenging party has the burden of proving that the arbitration award was secured through intentionally misleading conduct. Accordingly, we conclude that the district court correctly refused to vacate the arbitration award since the appellant did not satisfy his burden in showing by clear and convincing evidence that the respondent secured the award through intentionally misleading conduct.

We also consider whether the arbitrator's refusal to void a loan in the underlying dispute constituted a manifest disregard of the law. Because the arbitrator did not consciously disregard the applicable legal standard, we conclude that there was no manifest disregard of the law.

## FACTS AND PROCEDURAL HISTORY

In 2008, respondent Regents Bank, N.A., issued two loans to appellant Marshall Sylver. The first loan, intended as a bridge loan to purchase a residential property in Las Vegas, was partially secured by a deed of trust in another residential property located in Las Vegas. Sylver planned to sell the first property to pay off this loan. The second loan was a bridge loan to purchase a commercial building in Las Vegas. Sylver

proposed to obtain commercial take-out financing for the second loan with Regents' assistance. With the exception of recordation of a deed of trust in Nevada, all transactions took place in California, where Regents is sitused. Throughout the process of obtaining the loans and seeking long-term financing with Regents, James Hibert was Sylver's point of contact.

When financing failed to materialize, the parties twice adjusted the terms of the second loan's maturity date. Still, Sylver did not repay either loan.

Regents filed a complaint in district court for breach of contract and judicial foreclosure. In his answer, Sylver alleged that Regents breached certain fiduciary duties; that Regents made false representations to Sylver regarding long-term financing; and that the first loan was void because Regents engaged in mortgage banking activity in Nevada without first seeking a certificate of exemption, as required by NRS 645E.910. The district court stayed the proceedings and compelled arbitration as provided in the loan documents.

Both Sylver and Regents designated witnesses who would testify at the arbitration hearing. One witness, James Hibert, was designated by both parties. Prior to arbitration, Regents informed the arbitrator and Sylver that Hibert was unwilling to go to Las Vegas to testify at the arbitration hearing. Regents had recently terminated Hibert and could contact Hibert only through his attorney. Because Hibert's counsel informed Regents that Hibert was unwilling to attend the arbitration hearing in Las Vegas, Regents took Hibert's deposition and used it instead of his live testimony at the hearing. Sylver cross-examined Hibert for two hours during the deposition.

On the second day of the arbitration hearing, Sylver testified that he had a phone conversation with Hibert that morning, wherein

Hibert stated that he had never been asked to testify in Las Vegas but would be willing to do so. Nevertheless, Sylver did not ask for a continuance, and the arbitrator ultimately rejected Sylver's arguments and ruled in Regents' favor.

Regents filed a motion to confirm the arbitration award with the district court. Prior to the hearing on Regents' motion, Sylver filed a declaration by Hibert that, contrary to his earlier deposition testimony, supported allegations that Regents made false representations and failed to help secure long-term financing, despite Sylver's diligence throughout the process. In opposition to the motion, Sylver argued that Regents employed undue means in procuring the award by misrepresenting that Hibert was unavailable, and that the arbitrator had manifestly disregarded the law in refusing to void one of the loans. The district court confirmed the arbitration award and later entered an amended judgment and order of sale. Sylver appealed from both orders.

## DISCUSSION

On appeal, Sylver revives the contentions he made before the district court. Specifically, he argues that (1) Regents employed undue means in procuring the award, and (2) the arbitrator manifestly disregarded the law in refusing to void one of the loans.

*Standard of review*

We review a district court's confirmation of an arbitration award de novo. *Thomas v. City of North Las Vegas*, 122 Nev. 82, 97, 127 P.3d 1057, 1067 (2006). In so doing, we consider that "[s]trong public policy favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation." *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004). We apply a clear and convincing evidence standard when parties seek to

vacate an arbitration award. *Health Plan of Nevada v. Rainbow Med.*, 120 Nev. 689, 695, 100 P.3d 172, 178 (2004).

NRS 38.241 allows a court to vacate an arbitration award procured by fraud, corruption, or undue means. A court may also vacate an arbitration award under the common law ground that the arbitrator "manifestly disregarded the law." *Clark Cnty. Educ. Ass'n v. Clark Cnty. Sch. Dist.*, 122 Nev. 337, 341, 131 P.3d 5, 8 (2006). Sylver challenges the arbitration award on both grounds.

*The arbitration award was not procured by undue means*

Sylver argues that the arbitration award was obtained by undue means as a result of Regents' misrepresentation regarding Hibert's availability to testify at the arbitration hearing. Because we have never addressed the definition of "undue means" under NRS 38.241, we begin by reviewing and ultimately adopting the definition used by numerous state and federal circuit courts. Applying this definition to the circumstances raised here, we conclude that Sylver has not satisfied his burden for vacating the arbitration award.

*Definition of "undue means"*

NRS Chapter 38 embodies Nevada's adoption of the Revised Uniform Arbitration Act. Hearing on S.B. 336 Before the Assembly Judiciary Comm., 71st Leg. (Nev., April 24, 2001). NRS 38.241(1)(a) provides:

> Upon motion to the court by a party to an arbitral proceeding, the court shall vacate an award made in the arbitral proceeding if . . . [t]he award was procured by corruption, fraud or other undue means.

The language of NRS 38.241 closely mirrors the language of 9 U.S.C. § 10(a)(1), which also addresses the standard for vacating an arbitration award.

Numerous federal and state courts have addressed the meaning of "undue means" as used in this context.[1] These jurisdictions, in interpreting "undue means," begin with the principle of statutory construction that "a word should be known by the company it keeps." *National Cas. Co.*, 430 F.3d at 499. Accordingly, "[t]he best reading of the term 'undue means' under the maxim *noscitur a sociis* is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either." *Id.*; *see also PaineWebber Group*, 187 F.3d at 991 ("The term 'undue means' must be read in conjunction with the words 'fraud' and 'corruption' that precede it in the statute."); *Amer. Postal Workers Union*, 52 F.3d at 362 ("[U]ndue means must be limited to an action *by a party* that is equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator or other improper influence."). Thus, "'undue means' has generally been interpreted to mean something like fraud or corruption." *Three S Delaware*, 492 F.3d at 529; *see also PaineWebber Group*, 187 F.3d at 991 (citing *Amer. Postal Workers Union*, 52 F.3d at 362, and noting that courts have "uniformly construed the term undue means as requiring proof of intentional misconduct").

> Typically, to prove that an award was procured by undue means, the party seeking vacatur "must show that the fraud [or corruption] was (1) not

---

[1]*See, e.g., MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849 (4th Cir. 2010); *Three S Delaware v. DataQuick Information Systems*, 492 F.3d 520 (4th Cir. 2007); *National Cas. Co. v. First State Ins. Group*, 430 F.3d 492 (1st Cir. 2005); *PaineWebber Group v. Zinsmeyer Trusts Partnership*, 187 F.3d 988 (8th Cir. 1999); *Amer. Postal Workers Union v. U.S. Postal Service*, 52 F.3d 359 (D.C. Cir. 1995); *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401 (9th Cir. 1992); *Spiska Engineering v. SPM Thermo-Shield*, 678 N.W.2d 804 (S.D. 2004).

discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence."

*MCI Constructors*, 610 F.3d 858 (alteration in original) (quoting *A.G. Edwards & Sons*, 967 F.2d at 1404). *MCI Constructors* requires the party seeking to vacate the award to prove a causal connection between the undue means and the resulting arbitration award. *Id.*

> *Sylver has not established by clear and convincing evidence that the award was procured by undue means*

Adopting the above interpretation of "undue means," we conclude that Sylver has not met his burden for vacating the arbitration award.

First, the conduct alleged by Sylver does not rise to the level of intentional bad faith behavior equivalent in gravity to corruption or fraud. *See PaineWebber Group*, 187 F.3d at 991; *Amer. Postal Workers Union*, 52 F.3d at 362. While Sylver claims that Regents was incorrect in its representation that Hibert was unavailable, Sylver does not proffer any specific evidence that Regents' conduct was intentional, stating only that "[w]hether intentional or inadvertent, Regents' misrepresentations clearly impaired [a]ppellants' ability to present relevant evidence before the arbitrator."[2]

Second, Hibert's availability to testify was discoverable through due diligence. *See MCI Constructors*, 610 F.3d at 858. Sylver

---

[2]Sylver seems to insinuate that since Regents paid for Hibert to have independent legal representation, there was collusion between Regents and Hibert's attorney, despite Hibert's own willingness to testify. However, Sylver points to no evidence of such collusion. We therefore do not address this contention. *See* NRAP 28(a)(9)(A).

relied on Regents' representation that Hibert was unavailable to testify, despite Sylver listing Hibert as a witness and deposing him for two hours. On the second day of the arbitration hearing, Sylver discovered Hibert was willing and available to testify, yet Sylver did not seek a continuance of the arbitration.

Third, Sylver has not shown any causal connection between the arbitration award and the alleged misconduct. See id. Sylver had the opportunity to cross-examine Hibert prior to the arbitration, and Sylver himself admitted in district court that it was only after the arbitration that Hibert's potential testimony became so critical to Sylver's case.

Accordingly, the district court correctly refused to vacate the arbitration award based on undue means.

*The arbitrator's refusal to void the loan was not a manifest disregard of the law*

Sylver argues that the district court erred in confirming the arbitration award, asserting that the arbitrator manifestly disregarded the law by enforcing the loan despite Regents' violation of NRS 645E.910, which requires a national bank to seek a certificate of exemption before engaging in mortgage banking activity in Nevada.[3]

"'[J]udicial inquiry under the manifest-disregard-of-the-law standard is extremely limited.' 'A party seeking to vacate an arbitration

---

[3]The arbitrator also found that Regents did not violate NRS 645E.900, which makes soliciting or conducting business as a mortgage banker without a proper license or certificate of exemption unlawful. On appeal, Sylver does not present any legal authority or factual basis for challenging the arbitrator's decision besides a cursory statement alleging that Regents clearly violated NRS 645E.900. Accordingly, we need not address the arbitrator's decision regarding NRS 645E.900. NRAP 28(a)(9)(A).

award based on manifest disregard of the law may not merely object to the results of the arbitration.'" *Clark Cnty. Educ. Ass'n*, 122 Nev. at 342, 131 P.3d at 8 (quoting *Bohlmann v. Printz*, 120 Nev. 543, 547, 96 P.3d 1155, 1158 (2004), *disapproved on other grounds by Bass-Davis v. Davis*, 122 Nev. 442, 452 n.32, 134 P.3d 103, 109 n.32 (2006)). In analyzing whether an arbitrator manifestly disregarded the law, "'the issue is not whether the arbitrator correctly interpreted the law, but whether the arbitrator, knowing the law and recognizing that the law required a particular result, simply disregarded the law.'" *Id.* (quoting *Bohlmann*, 120 Nev. at 547, 96 P.3d at 1158); *see also Health Plan of Nevada*, 120 Nev. at 699, 100 P.3d at 179 (stating that manifest disregard of the law requires a "conscious disregard of applicable law").

NRS 645E.200 requires corporations to receive licenses from the State of Nevada prior to engaging in mortgage banking activity in Nevada. NRS 645E.150 exempts national banks (such as Regents) from the licensing requirement, but NRS 645E.160 requires any such foreign corporations to obtain a certificate of exemption prior to engaging in certain mortgage banking activity in Nevada, and NRS 645E.910 makes it unlawful for a foreign bank to engage in such banking activity if it fails to obtain the certificate of exemption.[4]

Because Regents is a national bank, the arbitrator determined that Regents violated NRS 645E.910 by recording a deed of trust in Nevada without a certificate of exemption. However, because no civil remedy existed at the time for violations of NRS 645E.910, the arbitrator

---

[4]NRS 80.015(3)(d) limits the application of NRS 645E.910 to noncommercial property. Thus, only the enforcement of the first loan, secured by the deed of trust in the Las Vegas residential property, is at issue.

concluded that "the unintentional violation of Chapter 645E by Regents had no materiality to the issues between the parties in the within action."[5]

On appeal, Sylver argues that even though no statutory civil remedy applies, Nevada courts have long refused to enforce contracts that are illegal or contravene public policy. Sylver refers to other jurisdictions that have found loans void and unenforceable following a lender's failure to comply with licensing requirements. *See, e.g., Klipping v. McCauley*, 354 P.2d 167, 169 (Colo. 1960); *Solomon v. Gilmore*, 731 A.2d 280, 289 (Conn. 1999).

Sylver appears to suggest that loans made in violation of licensing requirements are necessarily unenforceable. While we have previously addressed whether a contract is unenforceable on public policy grounds, we have never addressed whether failure to comply with a licensing requirement necessarily renders a contract unenforceable. We decline to do so now, as the operative standard of review in this case "does not entail plenary judicial review. . . . The governing law alleged to have been ignored must be well-defined, explicit, and clearly applicable." *Graber v. Comstock Bank*, 111 Nev. 1421, 1428, 905 P.2d 1112, 1116 (1995). Accordingly, the issue before us on appeal is limited to whether the arbitrator manifestly disregarded existing Nevada law, not whether the common law in Nevada should be extended to conform to other states' holdings.

---

[5]Under NRS 645E.950, conducting the business of a mortgage banker without a license or certificate of exemption is potentially a misdemeanor. However, prior to 2009, no civil remedies existed for violations of NRS 645E.910, and the current civil remedies were not given retroactive effect. *See* 2009 Nev. Stat., ch. 200, §§ 20-21, at 747-48 (enacting NRS 645E.920 and NRS 645E.930, respectively); 2009 Nev. Stat., ch. 474, § 84.7, at 2693 (amending NRS 645E.920).

Under existing Nevada law, a contract is unenforceable on public policy grounds where the policy against enforcement of a contract clearly outweighs the interest in its enforcement. *Picardi v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 251 P.3d 723, 727 (2011) (citing Restatement (Second) of Contracts § 178(1) (1981)). In applying this balancing approach, we take account of "the seriousness of any misconduct involved and the extent to which it was deliberate, and . . . the directness of the connection between that misconduct and the term." Restatement (Second) of Contracts § 178(3)(c)-(d) (1981).

On review, we begin by noting that the purpose behind NRS 645E.910 was to avoid predatory lending by out-of-state mortgage bankers and brokers. Hearing on A.B. 490 Before the Assembly Commerce and Labor Comm., 72d Leg. (Nev., April 4, 2003). Here, the record indicates that Sylver solicited Regents' business, offering the Nevada property as security. Regents did not engage in any other mortgage banking activity in Nevada, and the property secured a loan that Sylver freely entered into and later defaulted upon. The arbitrator found that Regents' violation of the licensing statute was unintentional. Sylver does not assert that Regents' failure to obtain a license or exemption to record the deed of trust is in any way related to his failure to repay the loan. We conclude that the public policy of the licensing requirement does not clearly outweigh the interest in enforcing the loan.

Accordingly, Sylver has not overcome the very high hurdle for showing that the arbitrator, "'knowing the law and recognizing that the law required a particular result, simply disregarded the law.'" *Clark Cnty. Educ. Ass'n*, 122 Nev. at 342, 131 P.3d at 8 (quoting *Bohlmann*, 120 Nev. at 547, 96 P.3d at 1158).

## CONCLUSION

NRS 38.241 provides for vacatur of arbitration awards procured by corruption, fraud, or undue means. We conclude that to vacate an arbitration award on a theory of "undue means" requires the challenging party to prove by clear and convincing evidence that the award was procured through intentionally misleading conduct. The appellant has not satisfied his burden. We further conclude that the arbitrator's refusal to void one of the loans was not a manifest disregard of the law.

For the reasons stated above, we affirm the district court's order confirming the arbitration award and judgment thereon.

_____, J.
Parraguirre

We concur:

_____, J.
Hardesty

_____, J.
Cherry