# IN THE SUPREME COURT OF THE STATE OF NEVADA

EAGLE JET AVIATION INC., A
NEVADA CORPORATION; AND ALEX
PENLY,
Appellants,
vs.
MILTON WOODS; AND CIRRUS
AVIATION SERVICES INC., A
WASHINGTON CORPORATION,
Respondents.

No. 69873



FILED

JUN 2 8 2017

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order confirming an arbitration award and subsequent judgment. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

This case arises out of a commercial dispute in the underlying action between Alex Penly and Eagle Jet Aviation, Inc. (collectively "EJA"), and Milton Woods and Cirrus Aviation Services, Inc. (collectively "Woods"). On August 20, 2007, Woods filed a complaint against EJA. During the proceedings before the district court, the parties agreed to arbitrate and selected John Bailey as arbitrator. Although Bailey was selected to be arbitrator in 2008, it was not until 2011 that he accepted appointment as arbitrator in the matter.

In April 2012, EJA retained Marc C. Fields to serve as primary counsel. Fields then made inquiries regarding the arbitration agreement and Bailey's disclosures. Prior to Fields' requests for information on the arbitration agreements and disclosures, there had been

no inquiries into these issues by either party. On May 29, 2012, in response to these inquiries, Bailey sent a letter to the parties concerning his appointment. In his letter, Bailey included a paragraph disclosing information about potential conflicts of interest. Specifically, Bailey stated that he had conducted "a couple [of] mediations" where Flangas McMillan Law Group was counsel for one of the parties, and that he had worked with Kim D. Price approximately 15 years earlier at a law firm where Bailey was a partner and Price was a paralegal. Price and Gus Flangas, of Flangas McMillan Law Group, were counsel for Woods at the time of the disclosures.

In subsequent communications, Bailey noted that Price was a paralegal while Bailey was a partner and both worked in the litigation department. Bailey stated that "[w]e probably worked on a couple litigation cases together; however, at the time [Price] worked at LS&C, I worked with probably 5 or 6 different paralegals." Bailey also discussed a matter from 5 to 7 years earlier that he mediated where Flangas McMillan represented a party, as well as a matter "probably 10 years ago" where Bailey's firm represented a client *adverse* to an individual represented by Gus Flangas, of Flangas McMillan Law Group.[1]

Based on these disclosures, EJA filed a motion in the district court to recuse or disqualify Bailey as arbitrator on July 17, 2012. Woods filed an opposition to EJA's motion and EJA filed a reply. The district

---

[1]The record does not clarify, and the parties dispute, whether Bailey was involved in one or two prior mediations with Flangas. Nevertheless, because in this instance it does not alter our ultimate disposition, we review under the assumption that Bailey was involved in two earlier mediations.

court reviewed the briefs in chambers and entered its review of the motions on the record on or about August 24, 2012. The minute order stated that the motion was denied because Bailey's co-employment with Price and serving as mediator in multiple cases for Woods' counsel did not merit disqualification. The parties proceeded to arbitration and the arbitration hearing was held for 20 nonconsecutive days from August 14, 2014, through December 10, 2014.

Bailey entered an award in favor of Woods, concluding that EJA breached its fiduciary duties to Woods and that, as a result, Woods lost 30% interest in EJA. Bailey then calculated Woods' damages at $1.5 million and also held that Woods was entitled to a $111,750 bonus from EJA. EJA filed a motion to modify or correct the arbitration award and a motion to vacate the arbitration award. Woods filed a motion to confirm the arbitration award. The district court confirmed the arbitration award and denied EJA's motions to vacate or correct the award on September 18, 2015. EJA now appeals and raises the following issues: (1) whether the district court erred by denying EJA's motion to vacate the arbitration award due to the arbitrator's nondisclosure of certain relationships; and (2) whether the district court erred by denying EJA's motion to vacate the arbitration award due to it being arbitrary, capricious, and unsupported by the evidence.

*The district court did not err by denying EJA's motion to vacate the arbitration award*

EJA argues that the arbitration award should be vacated because Bailey's failure to disclose the previous relationship with attorneys Price and Flangas, Bailey's "punish[ment] [of] [EJA's] discovery abuse while allowing the much greater discovery abuses by Woods to go entirely unpunished[,] and [his] issuing an Arbitrator Award which is

arbitrary and capricious," constituted evident partiality. EJA further argues that the arbitration award should be vacated "based on evident mathematical miscalculations and as arbitrary, capricious, and unsupported by evidence."[2]

Conversely, Woods argues that the relationships at issue did not require disclosure because they did not create a reasonable impression of partiality. Woods also argues that EJA waived Bailey's alleged nondisclosure by failing to object for four years and that there was no nondisclosure here because Bailey disclosed the relationships well in advance of the arbitration hearing. Lastly, Woods argues that Bailey was within his discretion in granting the award and that Bailey "did not disregard the facts" in doing so.

This court reviews a district court's confirmation or vacatur of an arbitration award de novo. *Sylver v. Regents Bank, N.A.*, 129 Nev. 282, 286, 300 P.3d 718, 721 (2013); *Thomas v. City of N. Las Vegas*, 122 Nev. 82, 97, 127 P.3d 1057, 1067 (2006).

*There was no evident partiality*

---

[2]In its briefing, EJA states that it "seek[s] to have the entire Arbitration Award vacated based on [Bailey's] nondisclosures. However, if that relief is not granted," EJA waives its arguments related to the bonus portion of the arbitration award in favor of Woods in the sum of $111,750. Furthermore, although EJA's brief states that "the arbitration award should be modified [or] corrected," EJA's arguments clearly relate to its motion to vacate the arbitration award, and not on a motion to modify or correct the award under NRS 38.242. Therefore, we analyze this issue in light of NRS 38.227 and *Clark County Education Ass'n v. Clark County School District*, 122 Nev. 337, 131 P.3d 5 (2006), regarding additional common-law grounds for reviewing arbitration awards, and not under NRS 38.242.

NRS 38.241, dealing with vacatur of arbitration awards, states that "the court *shall* vacate an award made in the arbitral proceeding" where there was "[e]vident partiality by an arbitrator appointed as a neutral arbitrator." (Emphasis added.) As clarified by this court in *Thomas*, "[c]laims of evident partiality fall into two categories: (1) actual bias, and (2) nondisclosure of information." 122 Nev. at 98, 127 P.3d at 1068. Thus, Bailey's arbitration award must be vacated if either category is present. *See id.*

*Nondisclosure of information*

NRS 38.227 governs an arbitrator's duty to disclose certain facts. Prior to its amendment by the Legislature in 2015, NRS 38.227 stated:

> 1. Before accepting appointment,. . . an arbitrator, after making a reasonable inquiry, *shall disclose* . . . any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the proceeding[.]

This court has stated that the proper standard for determining whether a party has demonstrated evident partiality by the arbitrator's nondisclosure of a relationship is whether the undisclosed relationship gives rise to a "reasonable impression of partiality." *Thomas*, 122 Nev. at 99, 127 P.3d at 1068–69. However, the *Thomas* court ultimately analyzed whether the relationship at issue created a "reasonable impression of partiality" under the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes, as provided for in the arbitration agreement between the parties. *Id.* at 100, 127 P.3d at 1069. The *Thomas* court specifically noted that it was not interpreting the arbitrator's duty to

disclose under NRS 38.145, the predecessor statute to NRS 38.241. *Id.* at 99-100, 127 P.3d at 1069.

Although *Thomas*, thus, did not address the present issue, the Ninth Circuit Court of Appeals case upon which the *Thomas* court relied for establishing the appropriate standard, provides guidance. *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir. 1994); *see Thomas*, 122 Nev. at 99, 127 P.3d at 1068-69. In *Schmitz*, the Ninth Circuit stated that "an arbitrator may have a duty to investigate independent of its *Commonwealth Coatings* duty to disclose."[3] *Id.* at 1048. "A violation of this independent duty to investigate may result in a failure to disclose that creates a reasonable impression of partiality." *Id.* It reasoned that "[r]equiring arbitrators to make investigations in certain circumstances gives arbitrators an incentive to be forthright with the parties, honestly disclosing what arbitrators might otherwise have an incentive to hide." *Id.* The Ninth Circuit concluded that the arbitrator had an independent duty to "make a reasonable effort to inform himself of [the arbitrator's law] firm's representation of . . . [the] parent [company of one of the parties involved in the arbitration]." *Id.* at 1049. It then held that because [the arbitrator] did not fulfill that duty, it "resulted in a reasonable impression of partiality under *Commonwealth Coatings*." *Id.* Based on this, the Ninth Circuit held that it constituted evident partiality, requiring vacatur of the arbitration award. *Id.*

Thus, the Ninth Circuit's starting point was determining the duty that an arbitrator has to disclose certain relationships. *Id.* It found

---

[3]*Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145 (1968).

that an arbitrator must "make a reasonable effort to inform [himself] of any existing or past ... relationships ... that are likely to affect impartiality or might reasonably create an appearance of partiality or bias." *Id.* (internal quotation marks omitted) (emphasis added). The Ninth Circuit then stated that "[s]everal courts have held, as we now hold, that representation of a parent corporation is likely to affect impartiality or may create an appearance of partiality in the lawyer's representation of or dealings with a subsidiary." *Id.*

Here, NRS 38.227(1) imposes a similar duty on the arbitrator.[4] However, unlike the party challenging the arbitration award in *Schmitz*, EJA fails to point to any caselaw supporting the proposition that the present relationship—a co-employment relationship, occurring nearly two decades prior to the start of mediation, and at least 15 years prior to the disclosures—is "likely to affect impartiality or [may] create an appearance of partiality." *Schmitz*, 20 F.3d at 1049. EJA does cite to two cases allegedly supporting its proposition that vacatur is warranted where an arbitrator fails to disclose that he has twice in the past participated in mediations where counsel for one of the present parties was counsel for a party in the earlier mediations; however, these cases are both distinguishable.[5]

---

[4]Moreover, pursuant to NRS 38.227(5), evident partiality is presumed only where there is a *direct and material interest* in the outcome of the arbitral proceedings," or where there is a "*substantial* relationship with a party." (Emphases added.)

[5]In *Valrose Maui, Inc. v. Maclyn Morris, Inc.*, the court vacated an arbitration award because, "while the arbitration was still pending, . . . [one of the parties'] counsel and the [a]rbitrator discussed the possibility of the [a]rbitrator's becoming the mediator in an unrelated legal malpractice

*continued on next page...*

Indeed, the weight of caselaw supports the opposite conclusion. *See e.g.*, *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1067-68 (9th Cir. 2010) (holding that the fact that an arbitrator's wife had been partner with an attorney representing one of the parties and that they had been co-counsel on at least one case did not require disclosure); *see also Positive Software Sols., Inc. v. New Century Mortg. Corp*, 476 F.3d 278, 283-84 (5th Cir. 2007) (listing cases).

Accordingly, we hold that Bailey did not violate the requirements imposed by NRS 38.227.

*Actual bias*

"The appearance of impropriety, standing alone, is insufficient to establish evident partiality in actual bias cases, because a reasonable impression of partiality does not necessarily mean that the arbitration

---

*...continued*

matter." 105 F. Supp. 2d 1118, 1120 (D. Hawai'i 2000). Thus, it was not the mere fact that an arbitrator was a mediator in an unrelated matter that justified vacatur; it was the fact that there were "improper communications" regarding "*future* potential remuneration" *while the current arbitration was still pending,* and that the arbitrator actually mediated this unrelated case while the parties were still going through arbitration. *Id.* at 1123-24 (emphasis added). Similarly, in *Burlington Northern Railroad Co. v. TUCO Inc.*, the Supreme Court of Texas held that a referral was sufficient to vacate the arbitration award. 960 S.W.2d 629, 639-40 (Tex. 1997). However, this was based on a referral in a case related to "federal litigation involving claims in excess of $1 million." *Id.* at 631 (emphasis added). Here, the record does not support an inference that Bailey was offered participation in future arbitrations, or that this happened while the current arbitration was pending. Furthermore, there is no evidence in the record that Bailey was given a referral to arbitrate as a direct result of the earlier mediations in which he participated. Thus, unlike in both cases cited by EJA, here there is no evidence that Bailey had any pecuniary interest in the outcome of the instant arbitration.

award was the product of impropriety." *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996) (internal quotation marks omitted) (citations omitted). Specific facts that point to an arbitrator's improper motives are needed in order for a party to prove evident partiality in an actual bias case. *Id.* "[T]he mere fact of a prior relationship is not in and of itself sufficient to disqualify arbitrators. The relationship . . . must be so intimate—personally, socially, professionally, or financially—as to cast serious doubt on the arbitrator's impartiality." *Kay v. Kaiser Found. Health Plan, Inc.*, 194 P.3d 1181, 1188 (Haw. Ct. App. 2008) (internal quotation marks omitted).

Here, to the extent EJA is arguing that actual bias warrants vacatur of the arbitration award, its claim fails. EJA fails to point to any evidence which would prove that the alleged relationships are "so intimate—personally, socially, professionally, or financially—as to cast serious doubt on the arbitrator's impartiality." *Id.* at 1188 (internal quotation marks omitted).[6] Furthermore, although EJA states that Bailey punished EJA for its "discovery abuse while allowing the much greater discovery abuses by Woods to go entirely unpunished," it fails to point to specific instances of Woods' alleged discovery abuses. Thus, EJA asks us to infer two things—(1) that Woods committed "much greater discovery abuses," and (2) that Bailey's actions were based on actual bias. The record and EJA's briefs do not support this inference.

---

[6]Because EJA fails to demonstrate that there was evident partiality, it is unnecessary to reach Woods' arguments related to waiver.

Accordingly, we hold that the district court did not err by denying EJA's motion to vacate the arbitration award on these grounds because EJA failed to demonstrate evident partiality.

*The award was not arbitrary and capricious or unsupported by the evidence*

"This court has previously recognized both statutory and common-law grounds to be applied by a court reviewing an award resulting from private binding arbitration." *Clark Cty. Educ. Ass'n v. Clark Cty. Sch. Dist.*, 122 Nev. 337, 341, 131 P.3d 5, 8 (2006). In addition to the statutory grounds outlined in NRS 38.241, "[t]here are two common-law grounds recognized in Nevada under which a court may review private binding arbitration awards: (1) whether the award is arbitrary, capricious, or unsupported by the agreement; and (2) whether the arbitrator manifestly disregarded the law." *Id.* The arbitrary and capricious standard "ensures that the arbitrator does not disregard the facts or the terms of the arbitration agreement." *Id.* Under this standard, this court's review "is limited to whether the arbitrator's findings are supported by substantial evidence in the record." *Id.* at 344, 131 P.3d at 9-10. Here, EJA's argument is limited to whether the award was arbitrary, capricious, or unsupported by the agreement.

Bailey's preliminary findings provide that:

This matter, and specifically the parties' ability to present admissible evidence in support or defense of their respective claims and counterclaims was materially plagued by the undisputed fact that a substantial portion of EJA's business and financial records disappeared immediately after the time that MWoods departed from EJA in April 2007. While the parties are unable to provide any clear indication as to what happened to those records, it is undisputed that [EJA], under oath and in [its]

SUPREME COURT
OF
NEVADA

(O) 1947A

own declarations, asserted that [it] is familiar with the creation of, maintenance of, and has line responsibility for the business records (including the accounting records) of each of the two companies . . . for all relevant times. . . . Therefore, in the absence of any plausible explanation for their disappearance, the responsibility to account for EJA's business and financial records falls upon [EJA].

Based on this, Woods "received a presumption at the arbitration hearing that [EJA] engaged in spoliation of EJA's (and other companies') business and financial records." Bailey also noted, when discussing credibility of the witnesses, that [EJA] was "less than honest with the Court (Judge Gonzalez) during a hearing in this matter . . . and intentionally misled and deceived the Court (Judge Gonzalez)." In spite of this, Bailey clearly looked to the evidence presented during the course of the proceedings and did not, as EJA argues, pick the award "out of thin air." Specifically, Bailey's award states:

Based on all of the evidence, it is clear that Cirrus lost its investment in EJA (a 30% interest) due to [EJA's] breaches of the fiduciary duties [it] owed to the company. It is difficult to determine the exact value of the Cirrus' interest in [the company] because [EJA's] breaches occurred over a period of time (i.e., between April 2007 and early 2010) and the value of such interest decreased after April 2007 due to the onset of the national and local economic recession (which cannot be attributed to [EJA]). Instructive in determining the value of Cirrus' interest in EJA (and damages) is the valuation given to such interest by Stuart Warren . . . wherein he valued such interest at approximately $2,000,000.00. *Though difficult to determine, Cirrus' damages due to [EJA's] breaches of [its] fiduciary duties can be calculated by looking at all of the admissible evidence—for*

example, evidence that EJA's Part 135 Certificate in and of itself had a separate market value—*and applying the undersigned's knowledge, training and experience.* Based on such, Cirrus suffered damages of $1,500,000.00 in the loss of its shareholder interest in EJA due to [EJA's] conduct.

(Emphases added.) Therefore, Bailey relied on his own expertise and looked to the admissible evidence in coming up with the figure for damages. Moreover, Bailey took into account factors that could not be attributed to EJA, for example, the national and local economic recession.

Additionally, EJA does not argue that Bailey "manifestly disregarded the law" by applying a presumption of spoliation against EJA, or that he did not, in fact, commit spoliation. *Clark Cty. Educ. Ass'n*, 122 Nev. at 341, 131 P.3d at 8. Therefore, EJA cannot now point to the lack of evidence as a basis for overturning the award when the findings suggest that EJA itself was the cause of the lack of evidence.

Accordingly, we hold that the district court did not err by refusing to vacate Bailey's arbitration award on these grounds.

Therefore, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A

cc:    Hon. Nancy L. Allf, District Judge
Eleissa C. Lavelle, Settlement Judge
Law Offices of Mark C. Fields, APC
Fox Rothschild, LLP
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A