141 Nev., Advance Opinion 37

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| AZG LIMITED PARTNERSHIP, A NEVADA LIMITED PARTNERSHIP, Appellant, vs. DICKINSON WRIGHT PLLC, Respondent. | No. 87019 |



FILED

AUG 21 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a final judgment in a garnishment proceeding. Eighth Judicial District Court, Clark County; Jessica K. Peterson, Judge.

*Affirmed.*

HOA Lawyers Group, LLC, and Steven T. Loizzi, Jr., Las Vegas, for Appellant.

Dickinson Wright PLLC and Cynthia L. Alexander and Nathaniel E. Saxe, Las Vegas, for Respondent.

---

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

A "chose in action" means "the right to bring an action to recover a debt, money, or thing." *Chose, Black's Law Dictionary* (12th ed. 2024). In this opinion, we consider whether attorneys possess or control their clients'

25-36798

chose in action by virtue of the attorney-client relationship for the purpose of answering garnishee interrogatories under NRS 31.290. We conclude that the type of control that a law firm or attorney has over the litigation when representing a client pursuing a given chose in action is substantively different from the possessory control implicated in NRS 31.290. Because, here, respondent Dickinson Wright PLLC did not control its client's chose in action within the meaning of NRS 31.290, the district court properly denied appellant AZG Limited Partnership's motion to traverse Dickinson Wright's garnishee interrogatory responses. We therefore affirm the district court's order.

## FACTS AND PROCEDURAL HISTORY

AZG obtained a judgment against a client of Dickinson Wright. To enforce that judgment, AZG served Dickinson Wright with garnishment interrogatories pursuant to NRS 31.290. Interrogatory 3 asked, in relevant part, whether Dickinson Wright had "under [its] control . . . any . . . choses in action of the [client.]" Dickinson Wright responded with a simple "no." Unconvinced, AZG moved to traverse Dickinson Wright's responses, asking the court to determine their accuracy and arguing that it was impossible that a law firm of Dickinson Wright's size would not have unearned client fees pursuant to a retainer or other payment agreement, which could be garnished. Additionally, AZG argued that Dickinson Wright must have its client's chose in action related to the representation in its possession, charge, or control.

In opposing AZG's motion to traverse, Dickinson Wright made an ex parte application for in camera review of certain documents that it suggested would explain why its "no" response was truthful and adequate. Dickinson Wright asserted that the attorney-client privilege required the

documents to be kept confidential. AZG responded that the attorney-client privilege typically does not cover agreements about payment of legal fees. The district court issued an order granting Dickinson Wright's request and conducted an in camera review to determine which portions of the in camera documents were privileged.

Although the in camera documents have not been produced to this court, it appears from the record that the documents outlined a payment arrangement wherein a third party paid the client's legal bills from Dickinson Wright. The district court noted that the issues of privilege should likely be decided by a discovery commissioner and through tools of discovery. Nevertheless, the district court concluded that, based on the arrangement in the in camera documents, Dickinson Wright did not have a retainer or any unearned funds from its client. The district court also rejected AZG's argument that the attorney-client relationship gave Dickinson Wright "control" of its client's chose in action, therefore ruling that Dickinson Wright's interrogatory response was truthful and denying AZG's motion to traverse.

However, the district court also ordered Dickinson Wright to provide the third-party financer's name and address to AZG because the district court found that information was not privileged. The district court stated that it would issue a subsequent order for disclosure if Dickinson Wright failed to comply on its own, but, in that case, it would also stay the proceedings for at least 30 days for the third-party financer to seek a writ of mandamus on the issue. This appeal followed.

## DISCUSSION

AZG raises two issues on appeal. First, AZG argues that the district court erred in concluding that Dickinson Wright properly stated

that it did not control its client's chose in action in its garnishee interrogatory responses. Second, AZG argues that the district court erred by not turning over the in camera documents despite using them as a basis for its decision. We address each contention in turn.

*Attorneys do not exercise possessory control of a client's chose in action*

AZG argues that the district court erred by denying the motion to traverse Dickinson Wright's "no" response to garnishee interrogatory 3. That interrogatory asks if the recipient of the interrogatory, the garnishee, has in its control any choses in action belonging to the defendant. Interrogatory 3 is taken verbatim from NRS 31.290(1) and reads in pertinent part:

> Did you have in your possession, in your charge or under your control, on the date the WRIT OF GARNISHMENT was served upon you any money, property, effects, goods, chattels, rights, credits or choses in the action of the Defendant(s), or either of them, or in which Defendant(s) is/are interested? If so, state its value and state fully all particulars.

NRS 31.290(1). Construing the meaning of "in your possession, in your charge or under your control" is an issue of statutory interpretation, which we review de novo. *See I. Cox Constr. Co. v. CH2 Invs., LLC*, 129 Nev. 139, 142, 296 P.3d 1202, 1203 (2013).

When interpreting a statute, we look first to the plain meaning of the text. *Id.* Where the parties advance different interpretations and the statute itself does not provide a definition, we may consult other sources to determine the meaning, such as dictionaries. *Jones v. Nev., State Bd. of Med. Exam'rs*, 131 Nev. 24, 28-29, 342 P.3d 50, 52 (2015). Where a word "has more than one plain and ordinary meaning," we may look to the

statutory framework to determine which meaning applies. *Lofthouse v. State*, 136 Nev. 378, 380, 467 P.3d 609, 611 (2020) (explaining that "context and structure [may] inform which of [multiple plain and ordinary] meanings applies"); *see also S. Nev. Homebuilders Ass'n v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) ("[I]t is the duty of this court, when possible, to interpret provisions within a common statutory scheme harmoniously with one another in accordance with the general purpose of those statutes and to avoid unreasonable or absurd results, thereby giving effect to the Legislature's intent." (internal quotation marks omitted)). Further, we construe statutes as a whole and in such a way that all provisions function together harmoniously. *See Orion Portfolio Servs. 2, LLC v. County of Clark ex rel. Univ. Med. Ctr. of S. Nev.*, 126 Nev. 397, 403, 245 P.3d 527, 531 (2010).

AZG argues that when a client hires an attorney to litigate the client's chose in action, the attorney takes "control" of the chose. In AZG's view, Dickinson Wright should have responded that it *did* have control of the chose in action that the client hired it to litigate. Thus, AZG argues that the district court should have granted its motion to traverse the interrogatory responses and alleges that the district court erred by denying said motion.

We recognized that choses in action are subject to property laws in *Newitt v. Dawe*, 61 Nev. 472, 473-75, 133 P.2d 918, 918-19 (1943) (recognizing that a chose in action was subject to the statutory requirements for creating a joint tenancy in personal property because "[c]hoses in action are personal property"). As personal property, choses in action may be assigned or transferred. For example, in *Reynolds v. Tufenkjian*, we observed that a breach-of-contract chose in action is

assignable property that may be the subject of an execution sale to enforce a judgment. 136 Nev. 145, 147, 153-54, 461 P.3d 147, 150, 154 (2020). And in *Gallegos v. Malco Enterprises of Nevada, Inc.*, we concluded that a district court may assign a right of action in execution of a judgment. 127 Nev. 579, 583, 255 P.3d 1287, 1289 (2011). These decisions comport with the ordinary meaning of a "chose in action." *See Chose, Black's Law Dictionary* (12th ed. 2024) (defining "chose in action" as "[t]he right to bring an action to recover a debt, money, or thing . . . [or p]ersonal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit").

As to what "control" attorneys exercise over a client's chose in action, we have recognized that the attorney-client relationship gives lawyers authority to control litigation strategy and tactics, and lawyers are considered agents of their clients. *See Rhyne v. State*, 118 Nev. 1, 8, 38 P.3d 163, 167 (2002) (recognizing "the well-established rule that while the client may make decisions regarding the ultimate objectives of representation, the trial lawyer alone is entrusted with decisions regarding legal tactics"); *Est. of Adams v. Fallini*, 132 Nev. 814, 820, 386 P.3d 621, 625 (2016) (observing that "the lawyer is the client's agent"). Thus, lawyers have some control and responsibility over a client's litigation, *see Gottwals v. Rencher*, 60 Nev. 35, 51-53, 98 P.2d 481, 484-85 (1940) (holding that attorneys may bind their clients to stipulations during litigation and other "steps of an action or proceeding"); *Molezzo Reps. v. Patt*, 94 Nev. 540, 542, 579 P.2d 1243, 1244 (1978) (holding that attorneys may be held personally liable for fees to reporting services incurred while representing a client), but the attorney-client relationship does not give lawyers ownership or property rights over the client's choses in action or over the ultimate disposition of the action.

*See* RPC 1.2(a) ("[A] lawyer shall abide by a client's decision concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. . . . A lawyer shall abide by a client's decision whether to settle a matter."). In sum, attorneys cannot be said to control (i.e., possess or own) the chose in action, given that the objectives of litigation and decisions on whether to settle are always up to the client. With this attorney-client relationship understanding of "control" in mind, we now look to the statutory scheme to determine if it is the same type of "control" as NRS 31.290 contemplates.

The associated words (or *noscitur a sociis*) canon holds that a statutory word "should be known by the company it keeps." *Sylver v. Regents Bank, N.A.*, 129 Nev. 282, 287, 300 P.3d 718, 722 (2013) (using the *noscitur a sociis* canon to interpret the term "undue means" based on the other words listed with it in NRS 38.241). The "company it keeps" in the surrounding text of Interrogatory 3 (as prescribed by NRS 31.290(1)) also cuts against AZG's interpretation of "control." *Sylver*, 129 Nev. at 287, 800 P.3d at 722. The terms "in your possession" and "in your charge" precede "under your control" in a list in the interrogatory, and each implicates property rights. The general legal definition of "possession" is "[t]he fact of having or holding property in one's power; the exercise of dominion over property"; or "[t]he right under which one may exercise control over something to the exclusion of all others." *See Possession, Black's Law Dictionary* (12th ed. 2024). The meaning of "charge" includes "a responsibility" or "an encumbrance, lien, or claim." *Charge, Black's Law Dictionary* (12th ed. 2024). These meanings suggest that in the context of NRS 31.290, "control" over a chose in action means the power to unilaterally

SUPREME COURT
OF
NEVADA

(0) 1947A

7

dispose of the asset to be garnished, not merely the ability to influence an aspect of the asset.

NRS 31.240-.460 govern garnishments to satisfy judgments, i.e., the process of transferring ownership of property from a garnishee to a plaintiff who has obtained a judgment against a defendant. *See, e.g.*, NRS 31.300(1) ("If the answer of the garnishee shows that the garnishee has personal property of any kind in his or her possession, *or under his or her control*, belonging to the defendant, the court . . . shall enter judgment that the garnishee deliver the same to the sheriff . . . ." (emphasis added)); NRS 31.310(1) ("Subject to the order of the court, a garnishee defendant . . . shall retain in the garnishee's possession and *control*, or deliver to the sheriff provided herein, all personal property . . . or choses in action of the defendant." (emphasis added)). Placing "control" within its statutory context, the influential control that lawyers exercise in litigation is clearly different from the possessory control contemplated in NRS 31.290. Thus, to operate harmoniously with its sister provisions in NRS Chapter 31, we conclude that the phrase "under your control" in NRS 31.290(1) refers to choses in action that the responding party has the power to transfer ownership of, consistent with the application of property rights. Because Dickinson Wright did not have the power to transfer or dispose of the chose in action merely by taking on the client, Dickinson Wright properly answered "no" to interrogatory 3.[1]

---

[1]Because AZG asserts for the first time in its reply brief that the district court erred in ruling that Dickinson Wright's response to Interrogatory 4 was proper, we decline to consider the argument. *See Khoury v. Seastrand*, 132 Nev. 520, 530 n.2, 377 P.3d 81, 88 n.2 (2016)

This court interprets statutory schemes to avoid absurd results. *See State, Priv. Investigator's Licensing Bd. v. Tatalovich*, 129 Nev. 588, 590, 309 P.3d 43, 44 (2013). "An absurd result is one so gross as to shock the general moral or common sense." *See Home Warranty Adm'r of Nev., Inc. v. State, Dep't of Bus. and Indus.*, 137 Nev. 43, 47, 481 P.3d 1242, 1248 (2021) (internal quotation marks omitted). AZG's proposed interpretation of "control" would expose every law firm that represents clients to garnishment liability, even where the law firm has no claim on any of the client's funds in the form of a retainer or contingency agreement. Such a result is contrary to the common sense understanding of the attorney-client relationship and could seriously impede access to justice by making attorneys less willing to be retained by clients. Given the applicability of property law, deciding that a judgment creditor could garnish a chose in action from the party's attorney, even in the absence of an assignment of rights, would likely lead to an absurd result. *Id.* Accordingly, we necessarily reject AZG's proffered construction. Given the foregoing, the district court did not err in denying the motion to traverse the response.

*AZG did not include all documents necessary for appellate review*

As a collateral matter, we note that it is not clear that the district court rendered a final decision on the issue of whether the in camera documents are discoverable. Even if we were to construe the district court's order as finally determining that the in camera documents must remain confidential, our review is hampered because the documents at issue were not included in the appellate record.

---

(citing NRAP 28(c) and concluding that an issue raised for the first time in an appellant's reply brief was waived).

As the appellant, AZG bears the responsibility to complete the appellate record with all materials necessary for meaningful review. *See Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 603, 172 P.3d 131, 135 (2007); *see also* NRAP 30(b)(3) (setting forth appellant's burden to provide an appendix containing portions of the district court record necessary for the appellate court's review). When the appellate record is incomplete, we presume that the missing materials support the district court's decision. *Cuzze*, 123 Nev. at 603, 172 P.3d at 135.

Here, the district court ordered Dickinson Wright to disclose the identity of the third-party financer but not the in camera documents. The district court also noted that the documents may be discoverable and suggested that the issue should go before a discovery commissioner. AZG asks us to order the district court to disclose the in camera documents. However, AZG has failed to pursue *any* of the available methods to meet its burden of completing the record before asking us to intervene. *Cf. Carson Ready Mix, Inc. v. First Nat'l Bank of Nev.*, 97 Nev. 474, 477, 635 P.2d 276, 277-78 (1981) ("If a wrong has been committed the law intends that the party injured shall have a remedy; but where it provides the manner in which relief shall be given, the path pointed out should be followed." (quoting *Johnson v. State*, 82 Nev. 338, 340, 418, P.2d 495, 496 (1966))); *Cuzze*, 123 Nev. at 603, 172 P.3d at135. For example, AZG never made a formal request for Dickinson Wright to turn over the in camera documents, nor did AZG move to compel disclosure despite the district court's suggestion that the discovery process would be the proper way to resolve the issue. Moreover, AZG never tried to enforce the portion of the district court's order directing Dickinson Wright to disclose the identity of its third-party financer. Likewise, the record does not suggest that AZG moved for

SUPREME COURT
OF
NEVADA

(O) 1947A

this court to obtain the documents directly from the district court pursuant to NRAP 30(d). Thus, the record does not reflect that AZG attempted to use any of the tools available to obtain this information or supply it to us for review.

Furthermore, AZG has not provided any authority establishing that the district court should have turned over the in camera documents sua sponte. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (noting that we need not consider arguments that are not cogently argued or supported by legal authority). The district court denied AZG's motion to traverse because it found that there was no evidence suggesting that Dickinson Wright possessed any of its client's property, which is exactly what Dickinson Wright stated in its garnishee response. Other than the chose-in-action theory, which we find unconvincing, AZG has not supplied any other arguments as to why we should reverse the district court. There was no evidence of a retainer or other unearned client funds, and the district court did not err by rejecting AZG's proffered interpretation of the word "control" and the attorney-client relationship. Ultimately, AZG bears the burden to cogently argue against the district court's order and to support those arguments with a fully developed record. Because AZG failed in both respects, it has not demonstrated that the district court erred.

## *CONCLUSION*

We conclude that neither attorneys nor law firms "control" a client's chose in action for the purposes of NRS 31.290(1) simply by virtue of their representation. As a result, Dickinson Wright properly responded in the negative to AZG's inquiry of whether the firm possessed or controlled

Supreme Court
OF
Nevada

(O) 1947A

11

any choses in action. We therefore affirm the district court's order denying the motion to traverse.

_____, J.
Stiglich

We concur:

_____, J.
Parraguirre

_____, J.
Bell