JON SEVEREN DEWEY, an Individual; ROSEMARY B. DiGRAZIA, an Individual; ANTOINETTE MOLLETT HARSH, an Individual; NANNA R. RASSU, an Individual; THE NATIONAL TRUST FOR HISTORIC PRESERVATION, a Private Non-Profit Organization; and THE TRUCKEE MEADOWS HERITAGE TRUST, a Non-Profit Corporation, Appellants/Cross-Respondents, *v.* THE REDEVELOPMENT AGENCY OF THE CITY OF RENO, NEVADA, Respondent/Cross-Appellant.

No. 35339

March 14, 2003                                    64 P.3d 1070

*Jeffrey A. Dickerson,* Reno, for Appellants/Cross-Respondents National Trust for Historic Preservation and Truckee Meadows Heritage Trust.

*K. Sue Trimmer,* Reno, for Appellants/Cross-Respondents Dewey, DiGrazia, Harsh and Rassu.

*Patricia A. Lynch,* City Attorney, and *Michael K. Halley* and *Michael L. Melner,* Deputy City Attorneys, Reno; *Goldfarb & Lipman* and *David M. Robinson, Lee C. Rosenthal,* and *Yoomie L. Ahn,* Oakland, California, for Respondent/Cross-Appellant.

## OPINION

*Per Curiam:*

This appeal and cross-appeal asks whether private, back-to-back staff briefings attended by less than a quorum of a public body violates Nevada's Open Meeting Law. We conclude that, absent sub-

stantial evidence of serial communications to support a finding of action or deliberation towards a decision, private back-to-back briefings of less than a quorum of a public body do not violate the Open Meeting Law. Therefore, we conclude that the district court erred in finding a violation of the Open Meeting Law and reverse the district court's judgment entering a permanent injunction prohibiting future briefings. Because we conclude there was no violation of the Open Meeting Law, we need not address the remainder of the parties' contentions on appeal.

## FACTS

The Redevelopment Agency of the City of Reno (Agency)[1] acquired the Mapes Hotel in 1996, and since that time has tried to find developers for the property. The hotel, built in 1947, had been listed on the register for the National Trust for Historic Preservation (NTHP), but was closed for over seventeen years prior to its demolition in January 2000.

On June 28, 1999, the Agency adopted a resolution by which it would accept bids for rehabilitation of the Mapes or, in the alternative, initiate paperwork for possible demolition. The Agency staff assembled a request for proposals (RFP), which was advertised in nine newspapers and sent to more than 580 developers whose names were supplied by NTHP.[2] The Agency received six responses that met the RFP requirements by the August 13, 1999, deadline for submission of bids. The responses were set for consideration at a public hearing scheduled for September 13, 1999.

On August 31, 1999, two private back-to-back briefings were conducted between members of the Agency staff and members of the Agency board. The purpose of the briefings was to discuss the staff's evaluation of the six RFP responses. The first briefing was attended by the staff and two Agency board members. The second briefing was attended by the staff and three Agency board members. For the purposes of an Agency meeting, a quorum is four or more members.

On September 11, 1999, two days prior to the public meeting, the Reno Gazette-Journal published an article reporting that three of the Agency members and the Reno city mayor intended to vote for demolition.

At the regularly scheduled public meeting on September 13, 1999, the Agency met to review the proposals for redevelopment, and to review the option of demolition and financing for demoli-

[1] The Agency board is comprised of the Mayor of the City of Reno and members of the Reno City Council.

[2] The Agency staff evaluation team consisted of Agency staff and consultants to the Agency. Agency staff are also City of Reno staff members. The evaluation team had the discretion to determine a mechanism or process for evaluating the RFPs.

tion. Agency staff presented the proposals. The meeting lasted approximately six hours and included staff presentations, public testimony, and substantial discussion between the Agency members. At the conclusion of the meeting, the Agency members voted to demolish the Mapes. Preliminary demolition commenced in late November 1999.

On November 10, 1999, appellants filed a verified complaint in the district court seeking declaratory and injunctive relief. Appellants consist of four individual preservationists and two non-profit organizations (National Trust for Historic Preservation and Truckee Meadows Heritage Trust). The defendants below were the Agency and third-party Clauss Construction.[3]

In the complaint, appellants alleged that the private, back-to-back briefings on August 31, 1999, between the Agency members and their staff violated the Open Meeting Law.[4] Appellants contended that this violation rendered void the Agency members' decision to demolish the Mapes at the subsequent September 13, 1999, public meeting. Appellants asserted three causes of action.

First, appellants sought an order declaring the actions of the Agency at the September 13, 1999, meeting void because of four alleged Open Meeting Law violations: (a) the Agency members took action on the Mapes issue through polling by the staff during the August 31 briefing; (b) the August 31 private briefings were meetings for the purpose of deliberating toward a consensus; (c) the Agency members publicly announced their decision prior to the public meeting (publication of information in the Reno Gazette-Journal) inferring action had been taken outside of the public hearing; and (d) the public meeting agenda was defective.

Second, appellants sought an injunction (a) prohibiting the Agency from conducting future private briefings, and (b) requiring the Agency to reopen the review process and reconsider all proposals previously submitted.

Lastly, appellants sought to void the actions taken by the Agency at the September 13, 1999, meeting because the written agenda for the meeting was defective.

While the Agency did not file an answer to the complaint because trial was conducted before its duty to answer arose under NRCP 12, the district court considered the Agency's responsive pleading to the preliminary injunction motion as its answer. The bench trial was conducted on December 16 and 17, 1999, at which the district court admitted twenty exhibits, heard testimony from

---

[3]Clauss Construction was retained by the City of Reno to demolish the Mapes. Clauss Construction was dismissed from this appeal by order of this court on January 22, 2002.

[4]*See* NRS 241.010-.040. The 1999 versions of the Open Meeting Law apply to the facts of this case. The Open Meeting Law was amended in 2001, however, the amendments have no bearing on this opinion.

seventeen witnesses, and reviewed testimony from five witnesses by deposition.

All of the Agency members testified that the city attorney was not present at the private briefings, nor was a quorum present at either of the briefings. Testimony from the Agency members indicated that this was intentional, and the briefings were conducted with the intent of complying with the Open Meeting Law. The members present at the private briefings testified that their recollections of the briefings were not perfect.[5] However, they remembered substantial portions of the briefings and testified that they did not provide their opinion or vote on the Mapes issue, nor were they polled as to their opinion or vote. The meeting attendees also indicated that the meetings were not intended to promote a discussion of the issues with the intent of arriving at a decision or course of action. Finally, all of the Agency members stated that they made their final decision regarding demolition of the Mapes at the public meeting on September 13, 1999.

Further, testimony by Agency members and Agency staff indicated that Agency staff did not communicate questions or comments made by the Agency members from the first briefing to those who attended the second briefing. Moreover, no evidence was presented to suggest that Agency members attending the first briefing communicated such information to members attending the second briefing. Additionally, based upon the testimony received at trial, the demolition option was *not* discussed at the August 31 private briefings because insufficient information was available regarding this option (*i.e.,* no bid information). Councilwoman Sherrie Doyle, during the first briefing, questioned Agency staff members regarding the status of the demolition bid. She was told additional information would be available at the scheduled September 13 meeting. Agency staff indicated that information pertaining to the demolition bids was not available at the time of the private briefings. The focus of the private briefings was the RFP option status and bid rankings.

Additionally, Agency Assistant City Manager Donna Kristaponis testified that the RFP evaluation information, as provided to the advisory boards, was disclosed in a September 2, 1999, Reno Gazette-Journal article. Finally, many of the Agency members or staff gave extensive testimony regarding what took place at the briefings, and two Agency members' notes of their briefings were examined or introduced into evidence.

Appellants presented the testimony of former Councilwoman Judy Herman. Herman's testimony was presented to attempt to establish that staff briefings were routinely used to avoid the Open

---

[5]Because the briefings did not include a quorum of members, no minutes of the briefings were kept by the City. *See* NRS 241.035.

Meeting Law, inferring that the Mapes briefings were also used for this purpose. Herman testified that the city manager during this case, Charles McNeely, was also the Reno city manager during her tenure with the city council. Herman indicated that it was McNeely's customary practice to conduct private back-to-back briefings between staff members and less than a quorum of city council members for the purpose of discussing complex or controversial issues agendized for upcoming public meetings. Herman characterized the private back-to-back briefings as secret meetings or serial meetings designed to give information to council members that was not made available to the public.

Herman also asserted that McNeely habitually polled council members about their votes regarding issues before the council. Herman stated that McNeely did this by asking individual council members if they "had a problem" with an agenda item. As a result, Herman testified that she quit attending any private briefings based upon her belief that the meetings violated the Open Meeting Law. She admitted, however, that the Reno City Attorney had informed her that the briefings did not violate the Open Meeting Law.

The district court entered its order and judgment on December 21, 1999. First, the district court held that the agendas for the September 13, 1999, public meeting met the requirements of NRS chapter 241. Second, the court concluded that the private briefings held on August 31, 1999, violated the Open Meeting Law because a constructive quorum was gathered for the purpose of conducting or deliberating the business of the public.[6] The district court found that no action on the Mapes occurred at the briefings. The district court accepted the testimony of the Agency that Agency members did not make a decision, commitment, or promise to vote in a particular manner on the Mapes issue at the briefings.

The district court then addressed whether the briefings constituted deliberations in violation of the Open Meeting Law. The district court found that the comments and questions by the Agency members made the briefings more of a discussion of the issue, rather than a one-sided, information-only briefing. Thus, the discussions were deliberations. Although the district court found no evidence that the members collectively discussed the issues, the court concluded that there was a possibility that cross-over communications occurred between the meetings. The district court indicated the possibility existed because witnesses could not remember everything that took place in the briefings, and no minutes were kept of the briefings. Based on this possibility, the district court found that the briefings were serial communications that created a constructive quorum involving deliberations in violation

[6]Referencing NRS 241.015(2) (defining "meeting").

of the Open Meeting Law. Finally, the district court concluded that the Agency members' statements that were published in the Reno Gazette-Journal declared their respective opinions on the Mapes issue and were not evidence that a decision had already been made about the Mapes at the August 31 private briefings.

Although the district court found an Open Meeting Law violation, it did not void the actions taken by the Agency at the September 13 public meeting. The district court concluded that the public meeting cured any Open Meeting Law violation. The district court found that the September 13 public meeting was not a sham or rubber stamp of the August 31 briefings. In so finding, the district court relied on the following considerations: (1) the length and nature of the debate that occurred at the public meeting, (2) the lack of unanimity of the Agency members' final vote, and (3) the fact that substantially all of the information conveyed and discussed in the briefings was also discussed at the public hearing or disclosed to the public prior to the public hearing.

Accordingly, the district court concluded that the actions taken at the September 13 public meeting were valid, and rejected appellants' arguments. However, the district court also concluded that some remedy should be granted for the Open Meeting Law violations. The district court therefore enjoined the Agency from holding prearranged, private meetings in back-to-back sessions with more than one Agency member in attendance.[7]

Appellants appealed, contending that the district court erred in refusing to void the actions taken at the September 13 meeting. The Agency cross-appealed, contending the district court erred in concluding the briefings violated the Open Meeting Law. We conclude that the briefings did not violate the Open Meeting Law and reverse the district court's judgment and vacate the permanent injunction. Because we conclude that no Open Meeting Law violation occurred, we decline to address appellants' contentions and dismiss their appeal as moot.

## DISCUSSION

### I. Standard of review

A district court's factual determinations will not be set aside unless they are clearly erroneous and not supported by substantial evidence.[8] A district court's conclusions of law are reviewed de novo.[9] This court has held that the construction of a statute is a

---

[7]The district court also excluded communications between Agency members and legal counsel from the injunction.

[8]NRCP 52(a); *Radaker v. Scott,* 109 Nev. 653, 657, 855 P.2d 1037, 1040 (1993).

[9]*Bopp v. Lino,* 110 Nev. 1246, 1249, 885 P.2d 559, 561 (1994).

question of law.[10] Additionally, " '[w]here the language of a statute is plain and unambiguous, and its meaning is clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.' "[11] Thus, courts are to give words in a statute their plain meaning unless " 'this violates the spirit of the act.' "[12]

### Private briefings and the Open Meeting Law

The Agency argues that the district court erred in finding that the August 31, 1999, briefings violated the Open Meeting Law and enjoining the Agency from having future briefings. The Agency contends that no quorum of Agency members was present at the August 31 briefings and no collective decision or commitment was ever sought or made at the August 31 briefings. Thus, the Agency contends that there was no meeting in violation of the Open Meeting Law.[13] We agree.

The purpose of Nevada's Open Meeting Law is dispositively set forth in NRS 241.010.[14] This court has concluded that "[t]he spirit and policy behind NRS chapter 241 favors open meetings."[15] Further, "a statute promulgated for the public benefit such as a public meeting law should be liberally construed and broadly interpreted to promote openness in government."[16] However, we have also acknowledged that the Open Meeting Law is not intended to prohibit every private discussion of a public issue. Instead, the

---

[10]*Attorney General v. Board of Regents,* 114 Nev. 388, 392, 956 P.2d 770, 773 (1998).

[11]*Id.* at 392, 956 P.2d at 774 (quoting *State v. Jepsen,* 46 Nev. 193, 196, 209 P. 501, 502 (1922)).

[12]*Id.* (quoting *McKay v. Bd. of Supervisors,* 102 Nev. 644, 648, 730 P.2d 438, 441 (1986)).

[13]*See* NRS 241.015(2).

[14]NRS 241.010 states:

> In enacting this chapter, the legislature finds and declares that all public bodies exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.

[15]*McKay,* 102 Nev. at 651, 730 P.2d at 443; *accord Board of Regents,* 114 Nev. at 393-94, 956 P.2d at 774.

[16]85-19 Op. Att'y Gen. 90, 93 (1985) (citing *Laman v. McCord,* 432 S.W.2d 753, 755 (Ark. 1968); *City of Miami Beach v. Berns,* 245 So. 2d 38, 40 (Fla. 1971); *Wolfson v. State,* 344 So. 2d 611, 613 (Fla. Dist. Ct. App. 1977); *Wexford Cty. Pros. Atty. v. Pranger,* 268 N.W.2d 344, 348 (Mich. Ct. App. 1978)); *see also McKay,* 102 Nev. at 651, 730 P.2d at 443.

Open Meeting Law only prohibits collective deliberations or actions where a quorum is present.[17]

Nevada follows a majority of states in adopting a quorum standard as the test for applying the Open Meeting Law to gatherings of the members of public bodies.[18] Thus, a quorum is necessary to apply the Open Meeting Law to a given situation. This is necessitated by the definition of a "meeting" in the Open Meeting Law. A "meeting" is defined in NRS 241.015(2) (1999) as: "[T]he gathering of members of a public body at which a quorum is present to deliberate toward a decision or to take action on any matter over which the public body has supervision, control, jurisdiction or advisory power."

An "action" for the purposes of the Open Meeting Law is defined in NRS 241.015(1) (1999) as:

> (a) A decision made by a majority of the members present during a meeting of a public body;
> (b) A commitment or promise made by a majority of the members present during a meeting of a public body; or
> (c) A vote taken by a majority of the members present during a meeting of a public body.

Action taken in violation of the Open Meeting Law is void.[19]

In *Attorney General v. Board of Regents*,[20] this court addressed serial meetings and their relation to the presence requirements of NRS 241.015(2). The case involved serial telephonic communications between members of the Board of Regents. The Regents were actually asked to vote on an issue via the telephone.[21] We concluded that serial telephonic communications by a *quorum* of members of a public body for the purpose of *"deliberat[ing] toward a decision or to make a decision* on any matter over which the public body has supervision, control, jurisdiction or advisory power

---

[17]*See McKay v. Board of Cty. Comm'r,* 103 Nev. 490, 495-96, 746 P.2d 124, 127 (1987).

[18]Ann Taylor Schwing, *Open Meeting Laws 2d* § 6.10(a), at 265, 269 n.78 (2000) (citing NRS 241.015(2) (1997) and 85-19 Op. Att'y Gen. 90 (1985)). Schwing distinguishes between quorum jurisdictions (where the open meeting law is activated whenever a quorum of a public body is present), deliberation jurisdictions (jurisdictions which expressly apply their open meeting law to meetings of fewer than a quorum of a particular public body) and jurisdictions which have not made a determination either way.

[19]NRS 241.036 states: "The action of any public body taken in violation of any provision of this chapter is void."

[20]114 Nev. 388, 956 P.2d 770.

[21]*See generally id.*

violates the Open Meeting Law."[22] Although a quorum of the Regents was not present in a physical location, their communications fell within the spirit of the Open Meeting Law. The communications permitted a quorum of the public body to be constructively present, creating a "meeting" under the Open Meeting Law.

Our interpretation of the Open Meeting Law in *Board of Regents* was influenced by the opinions and writings of the attorney general's office. We noted that the attorney general had consistently stated that telephonic communication or the use of mail polling to *make a decision by a quorum of a public body* is inconsistent with the spirit and intent of NRS chapter 241.[23] The attorney general has indicated that, while certain forms of communication may be lawful, they " 'should never be used as a subterfuge to compliance with the Open Meeting Law.' "[24]

However, we also reiterated in *Board of Regents* that it was the nature of the communications and the public body's intent to avoid compliance with the Open Meeting Law that turned the serial communications into a constructive quorum. We reaffirmed the language in *McKay v. Board of County Commissioners*[25] that referenced the ability of public officials to meet privately with less than a quorum to discuss public issues:

> While properly implying that members of a public body may ultimately make decisions on public matters based upon individual conversations with colleagues, [*McKay*] reiterates that the collective process of decision making, whether legal counsel is present or not, must be accomplished in public.
>
> . . . .
>
> That is not to say that in the absence of a quorum, members of a public body cannot privately discuss public issues or even lobby for votes.[26]

Here, the district court found that, unlike the serial communications in *Board of Regents,* the back-to-back briefings conducted with Agency members in this case were not done with the intent to make a decision. However, the district court found that the briefings were "deliberations" designed to aid Agency members in making a decision. As less than a quorum was present at each briefing, the district court reasoned that the briefings would not constitute a constructive quorum unless the discussions and

---

[22]*Id.* at 400, 956 P.2d at 778 (emphasis added).

[23]*See id.* at 395-96, 956 P.2d at 775-76.

[24]*Id.* at 395, 956 P.2d at 775 (quoting Richard H. Bryan, *Open Meeting Law Manual* 15 (3d ed. 1980)).

[25]103 Nev. 490, 746 P.2d 124 (1987).

[26]*Board of Regents,* 114 Nev. at 400, 956 P.2d at 778 (citation omitted).

questions of the Agency members in the first meeting were communicated to the Agency members in the second meeting. The district court then found that there was a possibility of cross-communication between the meetings and that a constructive quorum was established. We disagree.

### Deliberations

Neither the Legislature nor this court has defined the term "deliberation."[27] *Webster's College Dictionary* defines "deliberation" as consulting or conferring formally, "careful consideration before decision" or "formal consultation or discussion."[28] The attorney general, relying on *Sacramento Newspaper Guild v. Sacramento County Board of Supervisors,*[29] defines "deliberate" as "to examine, weigh and reflect upon the reasons for or against the choice . . . thus connot[ing] not only collective discussion, but the collective acquisition or the exchange of facts preliminary to the ultimate decision."[30]

The California court, in *Sacramento Newspaper,* recognized "deliberation and action as dual components of the collective decision-making process [which] brings awareness that the meeting concept cannot be split off and confined to one component only, but rather comprehends both and either."[31] In *Sacramento Newspaper,* all of the members of a county board met informally at a luncheon to discuss possible actions to avert or deal with an impending strike of county workers.[32] While no action was taken at the meeting, the California court deemed the collective discussion of a public issue with a quorum of members present was a "meet-

[27]Other jurisdictions have considered the meaning of deliberations. *See, e.g., Sacramento Newspaper Guild v. Sacramento Co. Bd. of Super.,* 69 Cal. Rptr. 480 (Ct. App. 1968); *Brookwood Homeowners Ass'n v. Municipality of Anchorage,* 702 P.2d 1317, 1322 n.5 (Alaska 1985) (noting that six other jurisdictions—Florida, Illinois, Maryland, Minnesota, New York and Wisconsin—have followed the reasoning of the court in *Sacramento Newspaper Guild* and have held that informal sessions, or deliberations, for the purpose of conducting business constitute meetings under state open meeting laws).

[28]*Random House Webster's College Dictionary* 348 (2d ed. 1997).

[29]69 Cal. Rptr. 480 (Ct. App. 1968) (a case involving the invocation of the attorney-client privilege by a county board where all members of the board met privately with the board attorney and other county executives for the purpose of discussing an impending strike of county-employed social workers), *superseded by statute as stated in Roberts v. City of Palmdale,* 9 Cal. Rptr. 2d 503 (Ct. App. 1992).

[30]Frankie Sue Del Papa, *Nevada Open Meeting Law Manual* 23 (8th ed. 2000).

[31]69 Cal. Rptr. at 485.

[32]*Id.* at 483.

ing'' under California's open meeting law. The court then concluded that a collective discussion with a quorum was a deliberation under the law and thus the private luncheon meeting violated the open meeting law.[33]

We agree with the definition of ''deliberations'' encompassed in *Sacramento Newspaper*. However, we note that the use of the word deliberations in *Sacramento Newspaper* contemplates a collective discussion amongst a quorum of a public body. It is the collective discussion of an issue with the goal of reaching a decision that constitutes a deliberation under California's open meeting law.[34] Discussions with less than a quorum are not deliberations within the meaning of the act.[35]

Here, no quorum was physically present at either briefing. Thus, a collective discussion equaling a deliberation could not take place unless a quorum was constructively present under *Board of Regents*.

### Constructive quorum

We now address whether the back-to-back briefings created a constructive quorum or serial communication in violation of *Board of Regents*.[36] If a constructive quorum did not exist, there was no violation of the Open Meeting Law. This is because the quorum standard is a ''brightline standard [in] legislative recognition of a demarcation between the public's right of access and the practical necessity that government must function on an orderly, but nonetheless legitimate, basis. . . . The public's right of access at later stages in the decision making process, and its accompanying right to question, is a strong safeguard that public servants remain accountable to the citizens.''[37]

Importantly, ''[r]equiring members of [a] board to consider only information obtained through public comment and staff recommendations presented in formal sessions would cripple the board's ability to conduct business.''[38] This reasoning underscores the need for other action, such as polling or collective discussions designed to reach a

---

[33]*Id.* at 487.

[34]*Id.* at 485-87.

[35]*Id.* at 486 n.4.

[36]*See* 114 Nev. at 400, 956 P.2d at 778-79 (''The constraints of the Open Meeting Law apply only where a quorum of a public body, *in its official capacity as a body,* deliberates toward a decision or makes a decision.'').

[37]*Delaware Solid Waste Authority v. News-Journal,* 480 A.2d 628, 635 (Del. 1984) (citations omitted).

[38]*Hispanic Educ. Com. v. Houston Ind. Sch. Dist.,* 886 F. Supp. 606, 610 (S.D. Tex. 1995), *aff'd,* 68 F.3d 467 (5th Cir. 1995).

decision, to create a constructive quorum between the briefings. When less than a quorum is present, private discussions and information gathering do not violate the Open Meeting Law.[39] Here, absent serial communication of the discussions, there was no quorum and therefore no deliberations in violation of the Open Meeting Law.

A review of the record demonstrates that no actual quorum of Agency members was present during the staff briefings on August 31, 1999. Moreover, substantial evidence supports the district court's finding that the Agency members did not meet on August 31, 1999, with the intent of taking action on the Mapes Hotel. Substantial evidence also supports the district court's finding that the content of the briefings involved more than information gathering. The attendees indicated various RFP ratings were discussed and the Agency members asked questions or made comments on the issue. The briefings were designed to permit the Agency members to gather information and discuss the highly complex RFP proposal process. However, substantial evidence does not support a finding that serial collective discussions occurred between the briefings.

Because not every attendee, particularly the Agency staff, could remember precisely what was discussed in each briefing, the district court shifted the burden of proof to the Agency to show that no serial collective discussions, *i.e.,* deliberations, occurred. The district court then concluded that the Agency had not met its burden because it did not keep minutes of the briefings. Such a shifting might be permissible if a quorum was physically present, or if there was a significant lack of memory on the part of the participants. However, the record lacks substantial evidence to support such burden shifting in this case. Agency members and staff gave significant testimony concerning the contents of the briefings. The attendees did not have a suspicious loss of memory or vague recollections that would support an inference that serial communications or collective discussions occurred or that the briefings were designed as a subterfuge to avoid the Open Meeting Law.

At best, the record reflects speculation that information discussed in the first meeting was also discussed in the second meeting, not that the meetings involved the kind of exchange of information and collective discussions present in the faxed distributions and serial telephonic communications identified in *Board of Regents.*[40] Thus, the district court's determination that the private

---

[39]*Id.*

[40]114 Nev. at 391, 956 P.2d at 773; *see also Wood v. Battle Ground School Dist.,* 27 P.3d 1208, 1216-17 (Wash. Ct. App. 2001) (collective action or discussions via e-mail designed to reach a decision prohibited).

briefings of August 31, 1999, constituted "gatherings" or deliberations as those terms are used in the definition of "meeting" was clearly erroneous and not supported by substantial evidence. Specifically, mere back-to-back briefings, standing alone, do not constitute a constructive quorum. Moreover, unlike the serial communications involved in *Board of Regents*, there is no substantial evidence in the record that Agency members or Agency staff met or gathered privately for the purpose of taking action on, or collectively discussing, a matter of public business. We conclude substantial evidence does not support a finding that the private briefings of August 31 created a constructive quorum or that a meeting in violation of the Open Meeting Law occurred. Accordingly, we reverse the judgment of the district court and vacate the permanent injunction.[41]

---

[41]THE HONORABLE CLIFF YOUNG, Senior Justice, having participated in the oral argument and deliberation of this matter as Justice of the Nevada Supreme Court, was assigned to participate in the determination of this appeal following his retirement. Nev. Const. art. 6, § 19; SCR 10. THE HONORABLE MARK GIBBONS, Justice, did not participate in the decision of this matter.