135 Nev., Advance Opinion 66

IN THE SUPREME COURT OF THE STATE OF NEVADA

SHARATH CHANDRA,
ADMINISTRATOR, NEVADA REAL
ESTATE DIVISION,
Appellant,
vs.
MELANI SCHULTE; AND WILLIAM R.
SCHULTE,
Respondents.

No. 75477

**FILED**

DEC 26 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from district court orders directing payment from the Real Estate Education, Research and Recovery Fund. Eighth Judicial District Court, Family Court Division, Clark County; Cheryl B. Moss, Judge.

*Reversed.*

Aaron D. Ford, Attorney General, David J. Pope, Chief Deputy Attorney General, and Donald J. Bordelove, Deputy Attorney General, Carson City, for Appellant.

Law Office of Amberlea Davis and Amberlea S. Davis, Las Vegas, for Respondent Melani Schulte.

William R. Schulte,
in Pro Se.

 
19-52117

BEFORE HARDESTY, STIGLICH and SILVER, JJ.

## OPINION

By the Court, STIGLICH, J.:

The Nevada Real Estate Education, Research and Recovery Fund (the Fund) compensates victims of real estate fraud whose judgment against a fraudulent real estate licensee is uncollectable. In this appeal, the Administrator of the Nevada Real Estate Division challenges nine orders directing payment from the Fund, one to Melani Schulte individually and eight to various LLCs in her control. The orders stem from Melani's then-husband William Schulte's fraudulent management of properties, all but one of which were jointly owned by the Schultes. Because Melani and William were married at the time of the fraud, we conclude that the spousal exception to Fund recovery in NRS 645.844(4)(a) prohibits Melani's individual recovery and the district court erred in granting her an award from the Fund. Further, because transactions involving one's own properties do not require a real estate license, the district court erred in granting awards to the eight LLCs under NRS 645.844(1). Accordingly, we reverse the nine district court orders directing payment from the Fund.

## BACKGROUND

Respondents William and Melani Schulte jointly owned numerous properties during their marriage. William, who at the time was a real estate licensee, managed these properties, among others, while working for his and Melani's real estate management business. In 2013, the Nevada Real Estate Commission found that William committed real estate misconduct by defrauding both third-party clients and also

fraudulently managing his and Melani's jointly owned properties. Melani was uninvolved in the misconduct.

Also in 2013, the district court granted a divorce between William and Melani. In the divorce decree, the district court awarded numerous properties that William fraudulently managed to Melani. These properties are currently held by distinct LLCs with Melani as the successor in interest.

As part of the divorce proceeding, the district court granted 21 individual judgments against William resulting from his real estate misconduct. One judgment was in favor of Melani for a payment she made to a third-party client to satisfy an outstanding judgment due to William's fraud. Twenty judgments were in favor of Melani's distinct LLCs. These judgments compensated the LLCs for William's failure to remit rent and security deposits while managing the LLC's properties that, at the time, he and Melani jointly owned.

After failing to collect on the judgments from William, Melani filed nine verified petitions for orders directing payment from the Fund, one requesting payment to Melani as an individual and eight to her LLCs. Appellant Sharath Chandra, as the Administrator of the Nevada Real Estate Division, opposed these petitions. The district court granted the petitions in nine nearly identical orders. Chandra appealed.[1]

---

[1]Melani challenges Chandra's standing to bring this action. "Standing is a question of law reviewed de novo." *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368, 252 P.3d 206, 208 (2011). NRS 645.845(1) specifically provides that "[w]henever the court proceeds upon a [Fund recovery] petition as provided in NRS 645.844, the Administrator may answer and defend any such action against the Fund on behalf of the Fund."

## DISCUSSION

The Fund is a special revenue fund that aids victims of real estate fraud whose judgments against real estate licensees have proven to be uncollectable.[2] *See* NRS 645.842; *Colello v. Adm'r of Real Estate Div. of State of Nev.*, 100 Nev. 344, 347, 683 P.2d 15, 16 (1984). In this appeal, we consider whether the district court properly granted Melani's petitions for recovery from the Fund under NRS 645.844 for both herself individually and for the eight LLCs under her control. In doing so, we must determine whether the spousal exception to recovery under NRS 645.844(4)(a) applies to Melani, who was married to William at the time of his misconduct but was no longer married at the time she sought recovery from the Fund. We also consider whether NRS 645.844(1) allows recovery from the Fund for properties that were co-owned by William at the time of his misconduct.

### The spousal exception prohibits Melani's recovery

Chandra argues that Melani may not recover from the Fund because the spousal exception to recovery applied at the time of the fraud, when Melani was still married to William. NRS 645.844 requires a petitioner seeking payment from the Fund to satisfy numerous requirements, including that "[u]pon the hearing on the petition, the petitioner must show that . . . [t]he petitioner is not the spouse of the

---

*See also Chandra v. Melani,* Docket No. 75477 (Order Dismissing Appeal in Part, November 30, 2018) (holding that Chandra may appeal from orders directing payment from the Fund). We hold that Chandra, as the Administrator, has standing.

[2]Every licensed real estate broker, broker-salesperson, and salesperson pays a fee to finance the Fund. *See* NRS 645.843.



debtor."[3] NRS 645.844(4)(a). In this case, the district court found that the spousal exception did not apply because Melani was not married to William *at the time* she filed her action for Fund recovery. We conclude that the district court erred.

Conclusions of law, including the interpretation and construction of statutes, are reviewed de novo. *Dewey v. Redev. Agency of Reno*, 119 Nev. 87, 93-94, 64 P.3d 1070, 1075 (2003). Where a statute is clear and unambiguous, this court gives effect to the ordinary meaning of the plain language of the text without turning to other rules of construction. *Cromer v. Wilson*, 126 Nev. 106, 109, 225 P.3d 788, 790 (2010). Conversely, when a statute is ambiguous, this court construes the statute by looking at the Legislature's intent and conforming the construction to public policy. *Great Basin Water Network v. State Eng'r*, 126 Nev. 187, 196, 234 P.3d 912, 918 (2010). A statute is ambiguous if it "is capable of being understood in two or more senses by reasonably informed persons" or is "one that otherwise does not speak to the issue before the court." *Nelson v. Heer*, 123 Nev. 217, 224, 163 P.3d 420, 425 (2007) (internal quotation marks omitted).

We determine that NRS 645.844(4)(a) is ambiguous as to timing. When reading the introductory clause of NRS 645.844(4) and NRS 645.844(4)(a) together, a reasonably informed person may understand the point of time a petitioner must show she is not the spouse of the debtor to be "[u]pon the hearing on the petition." Alternatively, an equally reasonably informed person may conclude that at the hearing, the petitioner must show she was not the spouse of the debtor at an unspecified

_____

[3]The "debtor" refers to the fraudulent actor, in this case William, who failed to satisfy an outstanding judgment in favor of the petitioner. *See* NRS 645.844.

SUPREME COURT
OF
NEVADA

(O) 1947A

time because NRS 645.844(4)(a) is silent as to timing. *See, e.g., Pub. Emps.' Benefits Program v. Las Vegas Metro. Police Dep't*, 124 Nev. 138, 154, 179 P.3d 542, 553 (2008) (reasoning that a statute's use of the present tense is neutral and expresses no intent as to timing); *see also Coal. for Clean Air v. S. Cal. Edison Co.*, 971 F.2d 219, 224-25 (9th Cir. 1992). Therefore, NRS 645.844(4) is capable of being understood in two or more senses. Moreover, NRS 645.844(4)(a) does not speak to the issue of when the spousal exception applies at all. Under either theory, NRS 645.844(4)(a) is ambiguous.

When construing an ambiguous statute, we often look to analogous statutory provisions. *State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.*, 116 Nev. 290, 294, 995 P.2d 482, 485 (2000). Our statutes governing the Fund are similar to California's statutes establishing its real estate fund. *Compare* NRS 645.841-.8494, *with* Cal. Bus. & Prof. Code §§ 10470-10481 (West 2008). In fact, the Legislature modeled the Fund after California's fund. *See* Hearing on S.B. 328 Before the Assembly Judiciary Comm., 54th Leg. (Nev., April 4, 1967). In construing NRS 645.844(4)(a), we consider California's interpretation of its nearly identical spousal exception. *See* Cal. Bus. & Prof. Code § 10471(c)(7)(A).

In *Powers v. Fox*, 158 Cal. Rptr. 92, 95 (Ct. App. 1979), the California Court of Appeal reasoned that the "theory of the statute setting up the [Real Estate Recovery Fund] is that a citizen has relied, to his damage, on the implied representation, inherent in the fact of licensure, that the licensee is honest and dependable." In contrast, "[t]he obvious reason for the [spousal] exception . . . is that, where the victim and the fraudulent actor are married, the reliance is more likely based on the marital relationship with the trust therein involved than on the [real estate] license." *Id.* The court in *Powers* therefore held that the petitioner could

not recover for her husband's misconduct that occurred during their marriage. *Id.*

We find the California Court of Appeal's reasoning persuasive. The theory of the Fund is not to aid those who mistakenly trusted a dishonest spouse, but to compensate victims who relied on real estate licensure to filter out dishonest real estate professionals. *See* NRS 645.844; *Colello*, 100 Nev. at 347, 683 P.2d at 16. NRS 645.844(4)(a) is a blanket prohibition on spousal recovery that helps ensure the Fund only awards victims who selected and relied upon a licensee because of the fact of licensure. We conclude that only one interpretation of NRS 645.844(4)(a) adequately comports with this purpose: the petitioner may not be the spouse of the debtor *at the time of the fraud.*

While we confirmed in *Colello* that the Fund's statutory scheme should be "liberally construed in order to effectuate the benefits intended to be obtained," we also reaffirmed that "[w]here alternative interpretations of a statute are possible, the one producing a reasonable result should be favored." 100 Nev. at 347, 683 P.2d at 17. For example, in *Administrator of Real Estate Education, Research & Recovery Fund v. Buhecker*, 113 Nev. 1147, 1149-51, 945 P.2d 954, 955-56 (1997), we refused to liberally construe the meaning of "judgment" in NRS 645.844(1) and allow a married couple to use their joint judgment against a real estate licensee in order to recover separate awards from the Fund when doing so would be inconsistent with the intent of the Fund.

Construing the spousal exception to apply at the time of the hearing on the petition does not effectuate the intended purpose of the Fund. We are not unsympathetic to Melani, who likely expected William to work for their real estate management business with integrity not because

he held a real estate license, but because of the trust underlying their marital relationship. Allowing Melani to recover, however, would not conform to the spousal exception's purpose of ensuring the Fund only compensates victims who relied on the real estate licensing scheme. Rather than satisfy the aims of the Fund in this context, it would simply increase the community property of a marital unit in order to satisfy a divorce award. Moreover, applying the spousal exception at the time of filing or upon the hearing as Melani urges could lead to absurd results regarding the timing of a claim, enable couples acting fraudulently in concert to recover, and deprive other Nevadans who actually relied on licensure from recovering when they are defrauded.[4]

Therefore, we hold that the spousal exception applies at the time of the fraud, not at the filing of the petition or upon the hearing. Because Melani was married to William when he committed the fraud, she may not recover from the Fund.

*The LLCs may not recover because the fraudulent transactions did not require a license*

We next consider whether Melani's eight LLCs may recover from the Fund. The district court granted Melani's petitions and directed payments to the LLCs from the Fund under NRS 645.844(1). Chandra contends that because William co-owned the defrauded properties, the fraudulent transactions did not require a real estate license and Fund recovery was therefore impermissible. We agree.

---

[4]The Nevada Real Estate Division aims to maintain the Fund at $300,000, and Melani's petitions for recovery are for a total of $94,045.46, nearly a third of the total available. *See* NRS 645.842.

SUPREME COURT
OF
NEVADA

(O) 1947A

Conclusions of law are reviewed de novo. *Dewey*, 119 Nev. at 93, 64 P.3d at 1075. In order to recover from the Fund, a petitioner must show that the underlying judgment is "with reference to any transaction for which a license is required" pursuant to NRS Chapter 645. NRS 645.844(1). NRS Chapter 645 excludes any "[o]wner or lessor of property" who manages the property or conducts real estate transactions "with respect to the property in the regular course of or as an incident to the management of or investment in the property." NRS 645.0445(1)(a).

We conclude that NRS Chapter 645 does not apply to William's transactions regarding the LLC-owned properties. William co-owned the victim properties as community property when he fraudulently collected their rents and security deposits. As such, no real estate license was required. *See* NRS 645.0445(1)(a); *see also* NRS 645.030(1) (defining "real estate broker" as a person performing tasks "for another"); NRS 645.019 (defining "property management" as requiring compensation pursuant to a property management agreement); *Stout v. Edmonds*, 225 Cal. Rptr. 345, 347 (Ct. App. 1986) ("[I]t is well established that a person does not act as a broker and does not require a license when he deals with his own property."). This outcome is in accordance with the intent of the Fund to aid third parties and not co-owners. *See Colello*, 100 Nev. at 347, 683 P.2d at 16; *see also Loomis v. Lange Fin. Corp.*, 109 Nev. 1121, 1127, 865 P.2d 1161, 1164 (1993) ("The legislature has enacted a comprehensive [real estate licensing] regulatory scheme . . . for the purpose of protecting the public in their dealings with persons in the real estate profession.").

William and Melani, as a community, were defrauded by William as an individual. Although Melani was uninvolved in the fraud and the properties were transferred from the community to Melani individually, it would be improper under NRS 645.844(1) to allow Melani to fictitiously remove William from the community at the time of the fraud so that she could assert a claim that required a real estate license. *See Buhecker*, 113 Nev. at 1149-50, 945 P.2d at 955-56 (holding that a husband and wife who jointly owned defrauded property could not separate their judgment in order to recover additional awards from the Fund). William, as an owner of the properties he defrauded, could not be said to have expected himself to be honest and dependable because of his real estate license. The Fund therefore may not serve to enlarge his former community property.

We also find Melani's argument that William defrauded the properties in his capacity as a real estate licensee while working for the marital community's real estate management business unpersuasive. Regardless of whether William directly managed the properties or managed them through the real estate management business, the Fund does not compensate victims when a co-owner of community property defrauds the community. The district court therefore erred in finding that the judgments in favor of the LLCs refer to transactions requiring a real estate license. Therefore, the LLCs failed to meet NRS 645.844(1)'s requirement.

SUPREME COURT
OF
NEVADA

(O) 1947A

Having concluded that the spousal exception applies at the time of the misconduct, and that transactions involving one's own properties do not require a real estate license and therefore do not qualify for NRS Chapter 645's protections, we hold that neither Melani nor her LLCs may recover from the Fund. Accordingly, we reverse the district court orders directing payment from the Fund.[5]

_____, J.
Stiglich

We concur:

_____, J.
Hardesty

_____, J.
Silver

_____

[5]Because we hold that Melani and her LLCs cannot recover under NRS 645.844(4)(a) and NRS 645.844(1), respectively, we need not address Chandra's alternative arguments regarding whether the district court lacked jurisdiction to amend the decree of divorce. We also need not decide the total amount Melani and her LLCs may collectively recover from the Fund. *See* NRS 645.844(1).