142 Nev., Advance Opinion 44



FILED

Jun 18 2026
ELIZABETH A. BROWN
CLERK OF SUPREME COURT

# IN THE SUPREME COURT OF THE STATE OF NEVADA

RBR MANAGEMENT, LLC, D/B/A COMMUNITY AMBULANCE,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE JOANNA KISHNER, DISTRICT JUDGE,
Respondents,
  and
KENNETH ALLEN WILLIAMS, AN INDIVIDUAL AND AS CO-SPECIAL ADMINISTRATOR OF THE ESTATE OF ABRAHAM KENNETH EZRA WILLIAMS; ROCHELLE JANIE WILLIAMS, AN INDIVIDUAL; ANGELA GABOURY, AS CO-SPECIAL ADMINISTRATOR OF THE ESTATE OF ABRAHAM KENNETH EZRA WILLIAMS; NEVADA PROPERTY 1, LLC, D/B/A THE COSMOPOLITAN OF LAS VEGAS, A FOREIGN LIMITED LIABILITY COMPANY; CLARK COUNTY FIRE DEPARTMENT, A GOVERNMENT ENTITY; AND GUAPO BODEGA LAS VEGAS LLC, D/B/A TAO GROUP OPERATING LLC,
Real Parties in Interest.

No. 91198

Original petition for a writ of mandamus challenging a district court order denying petitioner's motion to dismiss .

*Petition denied.*

Hutchison & Steffen, PLLC, and Courtney Christopher and Brittany A. Lewis, Las Vegas,
for Petitioner.

Christian Morris Trial Attorneys and Christian M. Morris and Jamie N. McInelly, Henderson,
for Real Parties in Interest Kenneth Allen Williams, Rochelle Janie Williams, and Angela Gabory.

Steven B. Wolfson, District Attorney, and Joel K. Browning, Senior Deputy District Attorney, Clark County,
for Real Party in Interest Clark County Fire Department.

Procopio, Cory, Hargreaves & Savitch LLP and Jeffery A. Garofalo, Las Vegas,
for Real Party in Interest Nevada Property 1, LLC.

Schnitzer Johnson & Watson, Chtd., and Michael R. Esposito and Crystal Y. Case, Las Vegas,
for Real Party in Interest Guapo Bodega Las Vegas LLC.

Holland & Hart LLP and Abraham G. Smith and Lauren D. Wigginton, Las Vegas,
for Amicus Curiae Nevada Ambulance Association.

---

BEFORE THE SUPREME COURT, STIGLICH, CADISH, and LEE, JJ.

*OPINION*

By the Court, STIGLICH, J.:

A plaintiff asserting professional negligence claims against medical providers must file with the complaint an affidavit from a medical expert in support of the claims. NRS 41A.071. Medical professional negligence can be committed only by a "provider of health care," NRS

2

41A.015, a phrase that is defined by statute and, relevantly, includes the term "clinic," NRS 41A.017.

Abraham Williams passed away due to cardiac arrest caused by anaphylactic shock. His estate sued the ambulance company that transported him to the hospital, seeking damages for negligence. The ambulance company moved to dismiss on the grounds that the claims against it sounded in professional negligence but the estate failed to file the required supporting affidavit. The district court denied the motion to dismiss, concluding that neither the ambulance company nor its emergency medical service (EMS) employees fell under the statutory definition of "providers of health care" or equated to a "clinic." The ambulance company now petitions this court for a writ of mandamus directing the district court to dismiss the claims against it.

This case thus requires us to determine whether an EMS provider is a "provider of health care" or whether ambulance services amount to a "clinic" under the statutory definition for the purposes of the medical professional negligence statutes. Given the importance of this issue, we exercise our discretion to consider this petition on the merits. We hold that an EMS provider is not a "provider of health care" under NRS 41A.017 and that an ambulance is not a "clinic" for purposes of the medical professional negligence statutes. We accordingly deny the petition.

FACTS AND PROCEDURAL HISTORY

As this case is at the motion-to-dismiss stage, we treat the allegations in the complaint as true. *TikTok, Inc. v. Eighth Jud. Dist. Ct.*, 141 Nev., Adv. Op. 51, 578 P.3d 640, 644 (2025). Abraham Williams, who had a shellfish allergy, was dining at a restaurant in Las Vegas when he began feeling sick. His friends helped him outside, where he collapsed and went into anaphylactic shock. Petitioner RBR Management, doing business

3

as Community Ambulance, and the Clark County Fire Department responded to the scene and began performing CPR on Williams. The EMS providers gave Williams one dose of epinephrine and moved him into an ambulance. When EMS providers delivered Williams to the hospital, he went into respiratory and cardiac arrest, passing away a few days later.

Williams' parents and estate, real parties in interest here, sued various parties involved in the incident, asserting several negligence claims against RBR.[1] RBR moved to dismiss those claims, arguing that the claims sounded in professional negligence but the estate did not file the required supporting affidavit per NRS 41A.071. The district court denied the motion to dismiss, reasoning that RBR was not a statutorily enumerated provider of health care and thus the claims could not sound in professional negligence under NRS Chapter 41A, such that the estate was not required to file an expert affidavit. The estate then amended its complaint, RBR moved to dismiss on identical grounds, and the district court again denied the motion. RBR now petitions this court for a writ of mandamus. The estate filed an answer, and RBR filed a reply.

## DISCUSSION

We have discretion to determine whether to consider a writ petition on the merits. *Smith v. Eighth Jud. Dist. Ct.*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991). We generally do not "consider writ petitions challenging district court orders denying motions to dismiss because such petitions rarely have merit, often disrupt district court case processing, and consume an 'enormous amount' of this court's resources." *Int'l Game Tech.*,

---

[1]Kenneth Allen Williams and Rochelle Janie Williams are Abraham Williams' parents, and Kenneth and Angela Gaboury are co-administrators of Williams' estate. For sake of clarity, we refer to these real parties in interest collectively as the estate.

4

*Inc. v. Second Jud. Dist. Ct.* , 124 Nev. 193, 197, 179 P.3d 556, 558-59 (2008) (quoting *State ex rel. Dep't of Transp. v. Thompson* , 99 Nev. 358, 362, 662 P.2d 1338, 1340 (1983)). Nevertheless, we will sometimes consider such petitions if "either (1) no factual dispute exists and the district court is obligated to dismiss an action pursuant to clear authority under a statute or rule, or (2) an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *Id.* at 197-98, 179 P.3d at 559.

This case presents an opportunity to clarify the scope of the professional negligence statutes, including whether EMS providers and ambulance services qualify as "provider[s] of health care." This important issue of law warrants our immediate consideration, and we thus exercise our discretion to consider this petition on the merits.

*RBR is not a provider of health care under NRS 41A.017*

RBR offers three reasons why either it or its employees should be considered "provider[s] of health care" under NRS 41A.017. First, although RBR concedes that EMS providers are not enumerated in NRS 41A.017, RBR argues that our professional negligence caselaw disregards the specific categories delineated by NRS 41A.017 in favor of examining "the nature of the medical treatment" when determining whether a person is a "provider of health care." Second, in the alternative, RBR contends that its EMS providers are functionally equivalent to an enumerated "provider of health care" and thus fit within the statutory definition. Third, RBR argues that Community Ambulance itself is a "clinic" and thus falls within NRS

5

41A.017.[2]

Each of RBR's contentions presents questions of statutory interpretation, which we review de novo. *Int'l Game Tech.*, 124 Nev. at 198, 179 P.3d at 559. When interpreting a statute, we look first to its plain text, *State, Dep't of Corr. v. Eighth Jud. Dist. Ct.*, 141 Nev., Adv. Op. 54, 579 P.3d 1018, 1021 (2025), utilizing any expressly defined terms in doing so, *Williams v. Clark Cnty. Dist. Att'y*, 118 Nev. 473, 485, 50 P.3d 536, 544 (2002). If there is no statutory definition and the parties advance different definitions of a term, we then turn to external sources, such as dictionaries. *AZG Ltd. P'ship v. Dickinson Wright PLLC*, 141 Nev., Adv. Op. 37, 574 P.3d 929, 932 (2025). In settling on a definition, we seek to give "effect to the Legislature's intent." *S. Nev. Homebuilders Ass'n v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005). Similarly, we construe ambiguous statutes "by looking at the Legislature's intent and conforming the construction to public policy." *Chandra v. Schulte*, 135 Nev. 499, 501, 454 P.3d 740, 743 (2019).

*NRS 41A.017 provides the exclusive definition of "provider of health care"*

RBR first urges us to go beyond NRS 41A.017's definition of "provider of health care," arguing that Nevada courts should look at the alleged conduct to determine whether an action sounds in professional negligence. According to RBR, health care providers need not be

---

[2]Amicus curiae Nevada Ambulance Association argues that under agency law principles, NRS 41A.017 covers EMS providers. Neither RBR nor the estate made this argument in lower court proceedings or on appeal, and accordingly, we need not address it. *See Diamond Enters., Inc. v. Lau*, 113 Nev. 1376, 1378, 951 P.2d 73, 74 (1997) (recognizing that this court need not consider issues raised for the first time on appeal).

enumerated in NRS 41A.017 to perform acts constituting professional negligence.

"Professional negligence" is defined as "the failure of a provider of health care, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care." NRS 41A.015. As noted, "provider of health care" is statutorily defined in NRS 41A.017:

> "Provider of health care" means a physician licensed pursuant to chapter 630 or 633 of NRS, physician assistant, genetic counselor, anesthesiologist assistant, dentist, licensed nurse, dispensing optician, optometrist, licensed physical therapist, podiatric physician, licensed psychologist, behavioral health and wellness practitioner, chiropractic physician, naprapath, doctor of Oriental medicine, holder of a license or a limited license issued under the provisions of chapter 653 of NRS, medical laboratory director or technician, licensed dietitian or a licensed hospital, clinic, surgery center, physicians' professional corporation or group practice that employs any such person and its employees.[3]

When interpreting a statutory list, this court generally adheres to the principle of "expressio unius est exclusio alterius," meaning that the inclusion of one thing implies the exclusion of that which is omitted. *Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967). With respect to a statutory list of specifically defined categories or terms, this court will "decline to create [additional categories or terms] by judicial fiat."

---

[3]The legislature recently amended this statute in nonmaterial ways. *See* 2025 Nev. Stat., ch. 120, § 6, at 67 (replacing "registered physical therapist" with "licensed physical therapist"); ch. 179, § 46, at 1120 (adding "genetic counselor"); and ch. 379, § 57, at 2518 (adding "behavioral health and wellness practitioner").

*Canarelli v. Eighth Jud. Dist. Ct.*, 136 Nev. 247, 254, 464 P.3d 114, 121 (2020). Under a plain reading of NRS 41A.015, medical professional negligence requires service by an enumerated provider of health care. EMS providers are not listed in NRS 41A.017, and canons of statutory interpretation dictate that this court should not read them into the statutes.

We are unconvinced by RBR's arguments that we should look beyond the plain language of NRS 41A.017 and NRS 41A.015. RBR cites our recent opinion *Limprasert v. PAM Specialty Hospital of Las Vegas LLC*, 140 Nev., Adv. Op. 45, 550 P.3d 825 (2024), for the proposition that this court looks at the conduct in question to determine whether a claim sounds in professional negligence, but RBR misreads the case. In *Limprasert*, we clarified the difference between ordinary negligence and professional negligence, holding that the "sole inquiry [between the two] is whether the claim involves *a provider of health care* rendering services in a way that causes injury." *Id.* at 831 (emphasis added). Nothing in *Limprasert* supports that we define "provider of health care" without reference to NRS 41A.017.

RBR also cites several out-of-state decisions in support of its position, but none are persuasive. Two of the cases involved a statutory scheme that specifically contemplated EMS providers in some capacity. *Canister v. Emergency Ambulance Serv., Inc.*, 72 Cal. Rptr. 3d 792, 800 (Ct. App. 2008), *disapproved of on other grounds by Gutierrez v. Tostado*, 572 P.3d 523 (Cal. 2025); *Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 759 (N.D. Cal. 2024). Two other cases involved courts interpreting a statutory catch-all provision. *Carter v. Milford Valley Mem'l Hosp.*, 996 P.2d 1076, 1080 (Utah Ct. App. 2000); *Ex parte Huntsville Emergency Med. Servs., Inc.*, 372 So. 3d 538, 544 (Ala. 2022). As the statutes at issue in those

8

cases are fundamentally different from NRS 41A.017, the extra-jurisdictional authorities are not illuminating in interpreting our statute. We conclude that because EMS providers are not included in NRS 41A.017, they are not providers of health care for the purposes of the professional negligence statutes and that this omission is dispositive.

### RBR's purported functional equivalency to enumerated providers of health care is immaterial

RBR next argues that, even if NRS 41A.017 provides the exclusive definition of "providers of health care," its ambulances and its EMS provider employees are the functional equivalent of some of the enumerated terms. RBR offers no cogent argument about how functional equivalency brings it within the scope of the plain language of NRS 41A.017. Moreover, the premise of RBR's argument relies on the federal Emergency Medical Treatment and Labor Act, but RBR does not offer any argument as to how that act bears on our interpretation of NRS 41A.017. We therefore decline to consider this argument. *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006).

### RBR is not a clinic

Finally, RBR argues that even if its employees are not providers of health care under the statutory definition, RBR itself is included in the enumerated terms of NRS 41A.017 as a "clinic." Noting that there is no statutory definition of "clinic," RBR claims that the term should be interpreted broadly and that an ambulance is a type of mobile clinic.

Following the list of enumerated medical professionals, NRS 41A.017 defines a provider of health care to include "a licensed hospital, clinic, surgery center, physicians' professional corporation or group practice

9

that employs any such person and its employees. "[4]  "Clinic" is not defined in NRS 41A.017.  Nor is it explicitly defined elsewhere in NRS Chapter 41A . We therefore turn to external sources to inform  our interpretation of the term "clinic" as used in NRS 41A.017 .  *AZG*, 141 Nev., Adv. Op. 37, 574 P.3d at 932.

In the context of a cancer drug donation program, NAC 453B.035 defines a "health clinic" as "a facility which provides, as a regular course of practice, medical services and goods and is operated by a [licensed] physician."  NRS 449.0175 defines a "rural clinic" as "a facility [in a rural area] where medical services are provided by a [licensed] physician assistant . . . or a [licensed] advanced practice registered nurse . . . who is under the supervision of a licensed physician."  The dictionary definitions of "clinic" include "a facility (as of a hospital) for diagnosis and treatment of outpatients," *Clinic*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2014), and "[a]n institution, building, or part of a building where ambulatory patients receive health care ," *Clinic*, *Stedman's Medical Dictionary* (28th ed. 2006).   Thus, examining related statutory definitions and the plain meaning of "clinic," we conclude that clinics are generally places where individuals can receive a broad range of medical care from diagnoses to outpatient treatment.  *See* Jill Seladi-Schulman, *What to Know About Medical Clinics* , Healthline.com, https://www.healthline.com/find-care/articles/articles/what-is-a-medical-clinic (last visited June 1, 2026).

---

[4]This definition has two components.  The qualifying entity must be one of those enumerated terms, and it must employ a person specifically identified as an individual provider of health care.  It is undisputed that RBR employs a provider of health care; as an ambulance service, RBR is required to employ a medical director who is a physician.   NAC 450B.505(1)(b), (3)(a).   The inquiry, therefore, is whether RBR itself constitutes an enumerated entity.

As amicus Nevada Ambulance Association notes, "clinic[s] can be mobile, too." "A mobile clinic is a customized motor vehicle that travels to communities to provide health care." Nelson C. Malone, Mollie Williams, Mary C. Smith Fawzi, Jennifer Bennet, Caterina Hill, Jeffrey N. Katz, Nancy E. Oriol, *Mobile Health Clinics in the United States*, 19 Int'l J. for Equity in Health 1, 1 (2020). Such mobile clinics generally provide "primary care, preventative care, and/or health care screening." Angela Coaston, Soo-Jeong Lee, Julene Johnson, Marcella Hardy-Peterson, Sandra Weiss, Caroline Stephens, *Mobile Medical Clinics in the United States Post-Affordable Care Act: An Integrative Review*, 25 Population Health Mgmt. 264, 265 (2022). Importantly, however, we discern that mobile clinics offer no other changes to the regular definition of clinic beyond the addition of wheels and a motor.

"Ambulances," as defined by statute, are "motor vehicle[s] which [are] specially designed, constructed, equipped and staffed to provide *emergency* medical care." NRS 450B.040 (emphasis added). "'Emergency care' means basic, intermediate or advanced medical care given to a patient in an emergency." NAC 450B.105. The differences between "basic," "intermediate," and "advanced emergency care" are defined in reference to standards for emergency medical technicians, advanced emergency medical technicians, and paramedics respectively. NAC 450B.013; NAC 450B.061; NAC 450B.148.[5] Thus, ambulances are limited to offering the specific emergency medical care that EMS providers are permitted to provide.

---

[5]We note that these standards of emergency medical care are distinct from the prescribed standards of medical care for providers of medical care enumerated in NRS 41A.017. *See, e.g.*, NRS 630.020 (defining the "practice of medicine"); NRS 631.049 (dentistry); NRS 633.081 (osteopathic medicine); NRS 634B.060 (naprapathy).

With that understanding of the term "emergency medical care" and its distinction from the type of care generally provided by clinics, we conclude that an "ambulance" is not a "clinic" for the purposes of NRS 41A.017. Ambulances are definitionally allowed to provide only "emergency medical care," NRS 450B.040, which refers specifically to EMS standards, NAC 450B.105. This distinction shows that clinics and ambulances play different roles in the medical ecosystem. If an individual requires life-saving intervention, they may call an ambulance and receive emergency medical care and transportation to a hospital where they can receive more in-depth treatment. Taylor Wendt, *What to Know About Ambulances*, WebMD.com, https://www.webmd.com/a-to-z-guides/what-to-know-about-ambulances (last visited June 1, 2026). In contrast, an individual goes to a clinic for a much wider variety of medical care, such as preventive care or to see a specialist. Jill Seladi-Schulman, *What to Know About Medical Clinics*, Healthline.com, https://www.healthline.com/find-care/articles/articles/what-is-a-medical-clinic (last visited June 1, 2026). As clinics and ambulances provide different individuals with different kinds of medical attention, we conclude that ambulances are not a type of clinic.

This interpretation reflects the legislature's intent in adding the term "clinic" to NRS 41A.017. Before 2015, the only medical facility or business listed in NRS 41A.017 was a "licensed hospital and its employees." 2011 Nev. Stat., ch. 273, § 49, at 1511. The legislature changed the language to include "clinic" to clarify that caps on noneconomic damages resulting from professional negligence actions also apply to the "clinics for which those doctors work or in which those doctors operate."[6] Hearing on S.B. 292 Before the S. Judiciary Comm., 78th Leg. (Nev., Mar. 26, 2015).

---

[6] These caps are codified at NRS 41A.035.

Indeed, one of the proponents of this change, John Cotton of Keep Our Doctors in Nevada (KODIN), testified that the intent of S.B. 292 was not "to add additional providers of health care into the bill" but to "reiterate and clarify KODIN's intent" to cap damages against clinics, as "lawyers [were] filing actions not only against doctors but also against the clinics for which those doctors work."[7]  *Id*.  The express intent of adding "clinic" was thus to clarify existing law, not to drastically change or expand the definition of "provider of health care."  Interpreting "clinic" broadly would contravene the legislature's intent by expanding the scope of NRS 41A.017 beyond what was contemplated.

We therefore hold that an "ambulance" is not a "clinic" within the meaning of NRS 41A.017.  Accordingly, all of RBR's attempts to expand the carefully crafted definition of "provider of health care" under NRS 41A.017 fail.  As RBR is not a "provider of health care," the district court did not err in denying the motion to dismiss.

*CONCLUSION*

When a law includes a list of categories to define a statutory term, we interpret the statute to exclude unenumerated categories from that list.  In this case, we reaffirm that principle and hold that EMS providers, who are not enumerated in NRS 41A.017, are not "provider[s] of health care" for purposes of the professional negligence statutes in NRS Chapter 41A.  In interpreting NRS 41A.017, we also conclude that ambulances are not "clinic[s]."  As neither RBR nor its employees are

---

[7]NRS 41A.017 was originally passed by voter initiative in 2004 as part of the KODIN campaign.  Dean Heller, Sec'y of State, State of Nev. Statewide Ballot Questions 2004, 14-22, https://www.leg.state.nv.us/division/research/votenv/ballotquestions/2004.pdf (last visited June 1, 2026).

providers of health care, the estate's action against it is not for professional negligence under NRS Chapter 41A, and the estate was therefore not required to file an expert affidavit. We conclude that the district court did not err in declining to dismiss the estate's claims against RBR and deny the petition for extraordinary writ relief.

Stiglich, J.

We concur:

Cadish, J.

Lee, J.